**STRACHAN SHIPPING COMPANY et al., Plaintiffs-Appellees,**

v.

**Lee H. HOLLIS, Deputy Commissioner, and Moses Lewis, Jr., Defendants-Appellants.**

No. 71-1376.

United States Court of Appeals, Fifth Circuit.

May 17, 1972.

Sidney Ravkind, Houston, Tex., for Lewis.

Anthony J. P. Farris, U. S. Atty., Houston, Tex., Leavenworth Colby, Sp. Asst. Atty. Gen., Dept. of Justice, Washington, D. C., Jack Shepherd, Asst. U. S. Atty., Houston, Tex., Patricia Baptiste, Appellate Section, Morton Hollander, Civ. Div., Dept. of Justice, Washington, D. C., for Hollis.

E. D. Vickery, David B. Connery, Jr., Houston, Tex., for plaintiffs-appellees.

Before GEWIN, AINSWORTH and SIMPSON, Circuit Judges.

SIMPSON, Circuit Judge:

We are faced on this appeal with a difficult and novel question concerning the administration of the Longshoremen's and Harbor Workers' Compensation Act, Title 33, U.S.Code, Chapter 18. The district court, 323 F.Supp. 1122 (S.D.Tex.1970), held that a formal compensation order issued in 1970 by the Department of Labor Deputy Commissioner, appellant Lee H. Hollis, in favor of claimant-appellant Moses Lewis, Jr., against employer-appellee Strachan Shipping Company and insurer-appellee Texas Employer's Insurance Association was barred by Section 22 of the Act, Title 33, U.S.C., Section 922.[1]  Acting pur-

---

1. Title 33, U.S.C., § 922:

"Upon his own initiative, or upon the application of any party in interest, on the ground of a change in conditions or because of a mistake in a determination of fact by the deputy commissioner, the

suant to Section 21 of the Act, Title 33, U.S.C., Section 921,[2] the court below enjoined enforcement of the 1970 order, which related to both compensation benefits and payment of Lewis' medical expenses. We affirm as to the award of compensation benefits but reverse as to the payment of medical expenses.

## THE FACTS

Claimant Lewis sustained an injury on navigable waters in the course of his employment as a longshoreman on July 11, 1956. Employer Strachan Shipping Company reported the injury to the deputy commissioner on July 16, 1956, and on August 28, 1956, the insurer reported

deputy commissioner may, at any time prior to one year after the date of the last payment of compensation, whether or not a compensation order has been issued, or at any time prior to one year after the rejection of a claim, review a compensation case in accordance with the procedure prescribed in respect of claims in section 919 of this title, and in accordance with such section issue a new compensation order which may termi·nate, continue, reinstate, increase, or decrease such compensation, or award compensation. Such new order shall not affect any compensation previously paid, except that an award increasing the compensation rate may be made effective from the date of the injury, and if any part of the compensation due or to become due is unpaid, an award decreasing the compensation rate may be made effective from the date of the injury, and any payment made prior thereto in excess of such decreased rate shall be deducted from any unpaid compensation, in such manner and by such method as may be determined by the deputy commissioner with the approval of the Secretary."

2. Title 33, U.S.C., § 921:
   "(a) A compensation order shall become effective when filed in the office of the deputy commissioner as provided in section 919 of this title, and, unless proceedings for the suspension or setting aside of such order are instituted as provided in subdivision (b) of this section, shall become final at the expiration of the thirtieth day thereafter.
   "(b) If not in accordance with law, a compensation order may be suspended or set aside, in whole or in part, through injunction proceedings, mandatory or otherwise, brought by any party in interest against the deputy commissioner making the order, and instituted in the Federal district court for the judicial district in which the injury occurred (or in the United States District Court for the District of Columbia, if the injury occurred in the District). The orders, writs, and processes of the court in such proceedings may run, be served, and be returnable anywhere in the United States. The payment of the amounts required by an award shall not be stayed pending final decision in any such proceeding unless upon application for an interlocutory injunction the court, on hearing, after not less than three days' notice to the parties in interest and the deputy commissioner, allows the stay of such payments, in whole or in part, where irreparable damage would otherwise ensue to the employer. The order of the court allowing any such stay shall contain a specific finding, based upon evidence submitted to the court and identified by reference thereto, that such irreparable damage would result to the employer, and specifying the nature of the damage.
   "(c) If any employer or his officers or agents fails to comply with a compensation order making an award, that has become final, any beneficiary of such award or the deputy commissioner making the order, may apply for the enforcement of the order to the Federal district court for the judicial district in which the injury occurred (or to the United States District Court for the District of Columbia if the injury occurred in the District). If the court determines that the order was made and served in accordance with law, and that such employer or his officers or agents have failed to comply therewith, the court shall enforce obedience to the order by writ of injunction or by other proper process, mandatory or otherwise, to enjoin upon such person and his officers and agents compliance with the order.
   "(d) Proceedings for suspending, setting aside, or enforcing a compensation order, whether rejecting a claim or making an award, shall not be instituted otherwise than as provided in this section and section 918 of this title."

that on August 14, 1956, it had begun voluntary payment of compensation without awaiting award. On October 10, 1956, the insurer further reported utilizing Form US–208, that it had stopped voluntary payments of compensation on October 9, 1956. It did not, however, file Form US–207 contesting liability for compensation.

Following the stoppage of compensation, Lewis sent an undated letter to the deputy commissioner, which was filed by the deputy commissioner on December 10, 1956, making claim for the resumption of compensation payments and medical treatment. Although no formal claim was filed on Form US–203, the deputy commissioner accepted the letter as a claim and gave notice to the insurer and the claimant that a prehearing conference was set for December 14, 1956.

The claimant was not represented by counsel at this conference. Thereafter, the insurer had him examined by its doctors. On January 9, 1957, the claimant wrote to the deputy commissioner complaining that the insurer had denied his eligibility for compensation. On March 13, 1957, the deputy commissioner wrote to the insurer inquiring of the status of the matter. Using Form US–206, the insurer, on March 20, 1957, reported that it was resuming voluntary payment of compensation, without award, effective from October 10, 1956, the date as of which it had previously stopped benefits.

On March 26, 1957, the insurer reported on a second Form US–208 that it had again stopped payment as of October 9, 1956. By letter dated April 10, 1957, the claimant again complained to the deputy commissioner about the stoppage and requested additional compensation. Notice was given to the insurer and the claimant of a second prehearing conference April 19, 1957. At the conclusion of this second conference, Claims Examiner William O'Keeffe filed and mailed to the insurer and the claimant

copies of a memorandum stating that the case was postponed for thirty days to permit the employer to ascertain the claimant's earnings.[3] A continuation conference was noticed for May 31, 1957.

Following this third prehearing conference before Mr. O'Keeffe, at which the claimant was still not represented by counsel, a memorandum dated June 4, 1957, was filed and distributed which stated that the claims examiner recommended voluntary payment of compensation without award for temporary partial disability through February 12, 1957. The insurer accepted this recommendation, made voluntary payment without award and on June 8, 1957, filed a third Form US–208 reporting that it had paid compensation benefits to the claimant to February 12, 1957, and stopped. After an intervening fourth unscheduled conference on August 9, 1957, the claimant requested a further prehearing conference, which was noticed for August 23, 1957.

The fifth prehearing conference was held as scheduled before claims examiner O'Keeffe after which he filed a memorandum, dated August 28, 1957, which stated that the claimant was not represented by counsel and that the claimant and the insurer agreed that there was a twelve percent (12%) permanent partial loss of the use of the left leg. The memorandum included a recommendation by Mr. O'Keeffe that the insurer make a further voluntary payment of compensation without award for 29.76 weeks at the rate of $35.00 per week, amounting to $1,041.60.

The insurer accepted this recommendation and on September 3, 1957, it filed a fourth Form US–208 reflecting that it had paid the recommended amount and had stopped further payments of compensation. Following receipt of this notice from the insurer, the deputy commissioner sent to the claimant, still not represented by counsel, a completed

---

3. Under Section 8 of the Act, Title 33, U.S.C., § 908, compensation is computed at varying percentages of a claimant's average weekly wages.

Form US–212, "Notice to Injured Employee of Termination of Compensation Payments", dated September 16, 1957. This form advised the employee to notify the deputy commissioner within ten days if the full amount of payments called for had not been received. The following language appeared at the conclusion of the form:

"The right to compensation for disability is barred unless claim therefor is filed within one year after the injury or within one year after the date of the last payment of compensation and any application for review of a compensation case must be filed with the Deputy Commissioner within one year after the date of the last payment of compensation or within one year after rejection of a claim".

On August 27, 1958, the deputy commissioner gave notice to the insurer and the claimant that a sixth prehearing conference was scheduled for September 5, 1958. Neither party at this conference requested the deputy commissioner to adjudicate the claim pursuant to Section 19(c) of the Act, Title 33 U.S.C., Section 919(c).[4] The deputy commissioner thereafter took no action pursuant to Section 14(h) of the Act, Title 33 U.S.C., Section 914(h),[5] to "properly protect the rights of all parties". Instead, he allowed the claim to remain in abeyance while the insurer continued to pay the cost of the claimant's treatment by the insurer's orthopedic surgeon, Dr. W. M. Palm.

This state of affairs continued until the claimant, by letter dated December 7, 1966, complained to the deputy commissioner that the insurer had terminated all further medical care. The deputy commissioner then gave notice to the insurer and to the claimant that a seventh prehearing conference would be held on February 9, 1967. As a result of this conference, Claims Examiner Robert D. Wedemeyer recommended that the insurer continue to furnish orthopedic socks to the claimant.

On January 15, 1969, the claimant again wrote to the deputy commissioner protesting the insurer's discontinuance of medical treatment. By letter of January 15, 1969, the deputy commissioner reminded the insurer of its continuing obligation and requested medical recommendations as to further medical care. Following receipt of the claimant's letter of April 24, 1969, advising of the insurer's continuing refusal to provide treatment, the deputy commissioner gave notice to the parties of an eighth prehearing conference on May 15, 1969.

At the May 15, hearing the deputy commissioner directed that the claimant be examined by a physician of the Pub-

4. Title 33, U.S.C., § 919(c):
"The deputy commissioners shall make or cause to be made such investigations as he considers necessary in respect of the claim, and upon application of any interested party shall order a hearing thereon. If a hearing on such claim is ordered the deputy commissioner shall give the claimant and other interested parties at least ten days' notice of such hearing, served personally upon the claimant and other interested parties or sent to such claimant and other interested parties by registered mail or by certified mail, and shall within twenty days after such hearing is had, by order, reject the claim or make an award in respect of the claim. If no hearing is ordered within twenty days after notice is given as provided in subdivision (b) of this section, the deputy commissioner shall, by order, reject the claim or make an award in respect of the claim."

5. Title 33, U.S.C., § 914(h):
"The deputy commissioner (1) may upon his own initiative at any time in a case in which payments are being made without an award, and (2) shall in any case where right to compensation is controverted, or where payments of compensation have been stopped or suspended, upon receipt of notice from any person entitled to compensation, or from the employer, that the right to compensation is controverted, or that payments of compensation have been stopped or suspended, make such investigations, cause such medical examinations to be made, or hold such hearings, and take such further action as he considers will properly protect the rights of all parties."

lic Health Service. Following that examination, the deputy commissioner, on June 12, 1969, advised the parties that the Public Health Service examining physician was of the opinion that the 1956 injury had caused marked deterioration of the claimant's left knee. The eighth prehearing conference was continued until June 26, 1969, as a result of which the claimant was advised to submit a formal claim for compensation, utilizing a Form BEC–203, because a question had developed "as to whether the claimant's previous correspondence constitutes an informal claim which would toll any limitation for filing claim for benefits at a later date". A formal claim on a Form BEC–203 was filed with the deputy commissioner by the claimant on July 14, 1969. The insurer, using a Form US–215, answered by denying the claimant's disability, either permanent or temporary, for the period claimed and by asserting that "a Formal Claim was not filed within the one year statutory period".

The claimant retained counsel on November 15, 1969, and a ninth prehearing conference was scheduled for January 22, 1970. At this conference it was determined that two issues were appropriate for a formal hearing: (1) Was the July 14, 1969, claim, which utilized a Form BEC–203, barred by the one year statute of limitations? and (2) Was the claimant entitled to continued disability compensation and medical treatment?

The first and only formal hearing was held before the deputy commissioner on

April 29, 1970. At this time counsel for the insurer and the employer asserted the following defense: The claimant's original letter of December 10, 1956, did not constitute a claim; even if that letter did constitute a claim, Claims Examiner O'Keeffe's memorandum of August 28, 1957, fully adjudicated any and all pending claims, thereby triggering the one year limitations period of Section 22 of the Act, (Title 33, U.S.C., Section 922, supra, at Note 1).

The deputy commissioner's decision was rendered on June 5, 1970. He held that the claimant's letter of December 10, 1956, constituted a sufficient informal claim under Section 13(a) of the Act, Title 33, U.S.C., Section 913(a),[6] and that the claims examiner's recommendation of August 28, 1957, did not affect the status of the pending claim which was not finally adjudicated in the absence of a compensation order. He then proceeded to award the claimant an additional $3,998.40 as compensation over and above what the insurer had already paid to him and to direct the insurer to continue to provide medical treatment for the osteoarthritis and thrombophlebitis which had been found to exist in the claimant's left leg.

## THE PROCEEDINGS IN THE DISTRICT COURT

To protect the employer and the insurer from additional liability for compensation under Section 14(f) of the Act, Title 33, U.S.C., Section 914(f),[7] the district court, on June 12, 1970, granted

---

6. Title 33, U.S.C., § 913(a):
   "The right to compensation for disability under this chapter shall be barred unless a claim therefor is filled within one year after the injury, and the right to compensation for death shall be barred unless a claim therefor is filed within one year after the death, except that if payment of compensation has been made without an award on account of such injury or death a claim may be filed within one year after the date of the last payment. Such claim shall be filed with the deputy

commissioner in the compensation district in which such injury or such death occurred".

7. Title 33, U.S.C., § 914(f):
   "If any compensation, payable under the terms of an award, is not paid within ten days after it becomes due, there shall be added to such unpaid compensation an amount equal to 20 per centum thereof, which shall be paid at the same time as, but in addition to, such compensation, unless review of the compensation order making such award

their motion for an interlocutory injunction against enforcement of the deputy commissioner's award of June 5, 1970. Each side moved for summary judgment, the deputy commissioner and the claimant contending that the 1956 claim opened the proceeding and remained pending until finally adjudicated in June 1970, and the employer and the insurer arguing that the 1969 claim was barred because it was not filed within one year of the last payment under the 1957 disposition.

The district court's decision was handed down on November 9, 1970. That court agreed with the deputy commissioner that the claimant's letter of December 10, 1956, constituted an adequate claim for compensation under the Act and that the claim examiner's recommendation of August 28, 1957, did not constitute an "order" of compensation. Nevertheless, the district court concluded that the voluntary payment of September 3, 1957, constituted a "last payment" within the meaning of Section 22 of the Act thereby barring the claim which was submitted in 1969.

The district court's memorandum opinion evidences a concern that employers and insurers who make voluntary payments under the Act would, if the position of the deputy commissioner and the claimant should be adopted, forfeit the protection of the limitations period:

"The practical effect of defendants' view would be that employers who compensate voluntarily after a claim has been made lose the protection of the limitation period, while employers who contest their liability to the point of a formal compensation order enjoy this protection. Such a result is scarcely harmonious with the voluntary, self-executing character of the Act". 323 F.Supp. at 1124.

In addition to this policy discussion, the court below determined that the language of Section 22 was unambiguous: the deputy commissioner had one year after the date of the last payment of compensation in which to modify his award "whether or not a compensation order has been issued". According to the district court, this meant that the one year limitation period of Section 22 was applicable to payments made voluntarily as well as to those made pursuant to a formal award. Consequently, the district court enjoined the enforcement of the entire compensation order of June 5, 1970. From this decision, the deputy commissioner and the claimant have appealed.

## THE APPELLATE CONTENTIONS OF THE PARTIES

The following excerpt from the deputy commissioner's brief succinctly summarizes his position:

". . . we submit that the agency's reading correctly applied the statute as providing that until a timely initial claim filed under § 913(a) has been finally determined by the deputy commissioner under § 919(a), it remains pending and open to the making of a final award. The plain meaning of § 915(b) and § 916 prohibits a timely claim being concluded either by voluntary payment, release or settlement by the parties, whether with or without a recommendation of a claim examiner, or by claimant's waiver of his rights to object to its closing or dismissal for want of prosecution. The provision of § 922 permitting modification of awards if applied for within one year of the last payment of compensation, with or without an award, has no bearing on the case of such a timely claim not finally acted upon." [8] Brief for Appellant Deputy Commissioner, p. 42.

The employer and the insurer argue that the district court correctly applied

is had as provided in section 921 of this title and an interlocutory injunction staying payments is allowed by the court as provided therein."

8. Title 33, U.S.C. § 915(b) :
"No agreement by an employee to waive his right to compensation under this chapter shall be valid."

the limitations period of Section 22 to the facts of this case and properly enjoined the payment of the compensation award of June 5, 1970.

## DISCUSSION

■ The text of the Act we think reflects a legislative intention to encourage the voluntary payment of compensation benefits to injured employees and to discourage the utilization of formal adjudicatory proceedings.[9] This policy has been implemented by the Department of Labor through the extensive use of informal conferences, presided over by its employees, designed to foster voluntary compensation payments, as exemplified by the protracted series of prehearing conferences held in this case.

In addition to its policy of encouraging the voluntary payment of compensation benefits to injured employees, the Department of Labor, apparently believing that the one year limitations periods of Sections 13(a) and 22 are too short to permit the computation of the full measure of damages in many cases, has endeavored to keep compensation cases alive through the simple expedient of failing to render formal compensation orders which would trigger Section 22's provisions. The unexplained reluctance of the agency to terminate claimant Lewis' case is commented upon in the deputy commissioner's brief as follows:

"The sixth prehearing conference of September 5, 1968, apparently did not result in either the insurer or the un-represented claimant requesting adjudication of the claim as provided by § 19(c). It thereby became the duty of the deputy commissioner, under § 14(h), 33 U.S.C. 914(h), to 'hold such hearings and take such further action as he considers will properly protect the rights of all parties'. The record does not disclose why the deputy commissioner failed to take further action to properly protect the rights of the parties as required by § 914(h). Instead, he simply allowed the claim to remain in abeyance while the insurer continued to pay the cost of claimant's treatment by Dr. W. M. Palm, the orthopedic surgeon selected by it". Brief for Appellant Deputy Commissioner, page 8.

None of the parties, throughout this extended period of time, aggressively pushed for the entry of a formal compensation order. Claimant Lewis, for the most part unrepresented by counsel, merely asked for additional compensation payments and the furnishing of medical care. The employer and the insurer, possibly fearful of the entry of an onerous formal compensation order, cooperated in the prehearing conference process of voluntary compliance until 1966. The deputy commissioner and his subordinates simply reacted to the claimant's letters and continued to hold the case in abeyance until the employer and the insurer forced an ultimate confrontation by controverting liability in 1969 and 1970.

Title 33, U.S.C. § 916:
"No assignment, release, or commutation of compensation or benefits due or payable under this chapter, except as provided by this chapter, shall be valid, and such compensation and benefits shall be exempt from all claims of creditors and from levy, execution, and attachment or other remedy for recovery or collection of a debt, which exemption may not be waived."

9. The congressional preference for voluntary payments to covered employees is manifested in Section 14 of the Act, Title 33, U.S.C. § 914. Subsection (a) provides that "compensation under this chapter shall be paid periodically, promptly, and directly to the person entitled thereto, without an award, except where liability to pay compensation is controverted by the employer." Subsection (b) requires the first compensation payment to be made within fourteen days after the employer learns of the injury or death and subsection (e) provides for the addition of a ten per cent surcharge should the compensation not be paid within the fourteen day period (subject to the employer's or insurer's right to controvert liability under the provisions of subsection (d)).

In reviewing the district court's injunction against the enforcement of the June 5, 1970, order of the deputy commissioner we believe it appropriate that the ultimate responsibility for bringing compensation cases processed under the Act to orderly conclusion rests with the deputy commissioner. As noted above, Section 14(h) of the Act, Title 33, U.S.C., § 914(h), requires the deputy commissioner to "take such further action as he considers will properly protect the rights of all parties". It would not be equitable, in our opinion, for courts to approve the deputy commissioner's vigorous efforts to secure voluntary compliance with the Act on the part of employers and their insurers while simultaneously approving the deputy commissioner's refusal to terminate compensation cases, by means of formal orders as envisioned in Section 22 of the Act, when voluntary payments are made.

With these considerations in mind, we find ourselves in agreement with the district court in this case that the plain language of Section 22 of the Act, Title 33, U.S.C. § 922, stands in the way of the enforcement of the deputy commissioner's June 5, 1970, compensation order. We reject the arguments advanced by the deputy commissioner and the claimant that the district court's decision conflicts with the anti-settlement provisions of Section 15(b) and Section 16 of the Act and improperly upsets a long-established and rational construction of the relevant statutory provisions by the agency charged with the administration of the Act.

It may well be that our decision that the payment of September 3, 1957, was the "last payment" within the meaning of Section 22 of the Act (thereby triggering the one-year limitations period with respect to modifications of compensation awards) will make it difficult for injured employees to obtain adequate compensation commensurate with the full extent of their physical disabilities. Should that eventuality occur, it would be for Congress either to lengthen Section 22's limitations period or to provide other means to postpone the running of the statute of limitations.

## LEWIS' ENTITLEMENT TO CONTINUED MEDICAL BENEFITS

Following the rendition of the deputy commissioner's order of June 5, 1970, the employer and the insurer sought injunctive relief as provided in Section 21 of the Act, Title 33, U.S.C. § 921. In granting the injunctive relief, the district court barred the receiving of further medical treatments by the claimant. In this Court, the insurer and the employer admit that their prayer for injunctive relief was too broad in that it extended to that portion of the deputy commissioner's order requiring that the claimant be furnished further medical care. Recognizing their continuing obligation under Section 7 of the Act, Title 33 U.S.C. § 907, to provide medical care to the claimant with respect to disabilities flowing from the accident of July 11, 1956, the employer and the insurer on this appeal do not contest their liability for medical benefits.

## CONCLUSION

The judgment of the district court, enjoining the enforcement of the compensation provisions of the deputy commissioner's order of June 5, 1970, is affirmed. The portion of the lower court's judgment prohibiting the furnishing of further medical benefits to the claimant, is reversed. Each party to this appeal shall pay its or his own costs.

Affirmed in part; reversed in part.

AINSWORTH, Circuit Judge (concurring in part and dissenting in part):

I concur in the reversal of the lower court's judgment relative to denial of further medical benefits but dissent from the affirmance of the judgment below insofar as it enjoined the enforcement of the compensation provisions of the Deputy Commissioner's order of June 5, 1970.

The majority opinion holds that the compensation claim of the longshoreman, Moses Lewis, Jr., is time barred by the provisions of 33 U.S.C. § 922, a provision of the Longshoremen's and Harbor Workers' Compensation Act. The decision we reach here is far-reaching, for not only is Moses Lewis, Jr.'s claim time barred, but if the principle announced by the majority prevails, many additional longshoremen's claims ("many hundreds, if not thousands," Dy.Com. brief, p. 20) will also be barred. The end result will be to "set aside the agency interpretation of 40 years" (Dy.Com. brief, p. 20).

The longshoreman herein filed his claim for compensation informally by writing a letter several months after he was injured, and within one year thereof, to the Deputy Commissioner making claim for resumption of compensation payments. A formal claim on Form US–203 was not made but the Deputy Commissioner accepted the letter as the longshoreman's claim and gave notice of it to the insurer and claimant and set a date for a prehearing conference. Neither the claimant nor the insurer thereafter pressed for a formal adjudication thereof or for a formal compensation order, and voluntary payments were made from time to time by the insurer to the claimant.

I agree with the agency construction of the Act that the longshoreman's timely filed initial claim under 33 U.S.C. § 913(a) remains pending and open until a final determination by a deputy commissioner under 33 U.S.C. § 919(a); and that provisions of 33 U.S.C. § 922 permitting modification of awards, if applied for within one year of the last payment of compensation with or without an award, applies only to cases where a determination has been made by a deputy commissioner. No such determination was ever made prior to the present decision of the Deputy Commissioner before us for review. There were recommendations or informal approval by the Claims Examiner but they were not those of a deputy commissioner. See

Agency Regulations §§ 01.11 and 31.8; 33 U.S.C. § 919(c). Thus the majority's citation of Section 922 as a bar to the longshoreman's claim is erroneous under the circumstances.

I attach as an appendix to this dissent a letter dated August 6, 1971 by the Bureau's highest officer for Longshoremen's Act matters relative to the Bureau's interpretations of the Act on the matters involved in this case. The adverse consequences of the majority ruling which rejects an agency interpretation of many years' standing are clearly delineated in the letter.

## APPENDIX

U. S. DEPARTMENT OF LABOR EMPLOYMENT STANDARDS ADMINISTRATION

Bureau of Employees' Compensation

Washington, D. C. 20211

August 6, 1971

[EMBLEM]

File No. 100–1523

Leavenworth Colby, Esq.
Special Assistant to the Attorney General
Department of Justice
Washington, D. C. 20530

Dear Mr. Colby:

This letter replies to your request for the Bureau's views as to the assertions of the appellee insurance carrier in their brief in the Moses Lewis case. These concern the effect of § 01.11 and § 31.8 of the Regulations respecting "informal adjudicatory processes" and the application of the modification provisions of §. 22 of the Act in cases where payments of compensation have been made without the deputy commissioner having made a determination under § 19(a) of the Act as to the claimant's condition or any other fact. You further ask how the carrier's assertions, if accepted, will affect the administration of the Act.

Basically the carrier's two assertions are directed toward the same end, namely, that injured workers should be required to file successive additional claims when-

ever the carrier begins and stops voluntary payments of compensation, even though the worker has already filed within one year of injury his original claim as required by § 13(a) of the Act, which claim has never been finally determined by the deputy commissioner as required by § 19. This is so, the carrier says, because (1) any agreement of the parties for voluntary payments, if not rejected by a claims examiner, is an "informal adjudication" under the terms of § 01.11 and § 31.8 of the Regulations and because, in any case, (2) the statute of limitations on modifications of awards under § 22 of the Act requires re-filing a claim each time the carrier begins and stops voluntary payments even where no agreement for payment was recommended.

This demand of the carrier for multiple re-filing of claims is untenable and unworkable. It would require every injured worker, to prevent forfeiture of his timely-filed claim before it was ever determined by the deputy commissioner under § 19, to re-file his claim at least once each year unless the carrier had never paid compensation at all. Such a requirement would result in an excessive multiplication of paper work in the district offices and would require greatly increased administrative handling of cases to assure claimants the protection of their rights under the Act.

Under § 01.11 and § 31.8 such informal agreements are plainly neither "informal adjudications" nor "settlements". They are not determinations by the deputy commissioner, but merely agreements by the parties as to their appraisal of the then existing factual situation of the claimant, to which the claims examiner has seen no reason to object. The carrier's contrary contention would place the Regulations in clear violation of § 13 and § 19 of the Act.

Authority for the informal adjudicatory processes to which Regulation § 01.11 refers (i. e., adjudication of claims without formal hearing) is found solely in § 19(c) of the Act and not elsewhere. The deputy commissioner, although no

formal hearings are held, must still, under the Act "determine all questions in respect of such claim" and "by order reject the claim or make an award." Contrary to the carrier's assertions claims examiners have no authority whatsoever to make "adjudications", informal or otherwise. In § 31.12 the Regulations accordingly prescribe that, whether formally or informally, "orders adjudicating claims for compensation" shall be so designated, shall conform to numerous other explicit requirements, and shall be served personally or by registered mail upon the claimant, the employer and the insurance carrier.

These requirements of § 01.11 and § 31.-12 of the Regulations are complemented by § 31.8 and § 31.15. Section 31.8 prescribes the procedure for pre-hearing agreements of the parties, leading either to informal adjudications under § 01.11 of the Regulations and § 19(c) of the Act, or to interlocutory agreements upon recommendations which lead to voluntary payments by the carrier for a certain period without any such "informal adjudication", thus leaving the matter for later determination by the deputy commissioner under § 19 of the Act. To prevent any misunderstanding, § 31.15 of the Regulations expressly prescribes that "during the pendency of a compensation case" formal orders shall not be made "with respect to interlocutory matters" in the course of proceedings on a claim and § 31.8 further prescribes that the parties should be told that such agreements, although recommended, cannot be determinations or decisions of the deputy commissioner as required by § 19 of the Act.

The procedure followed by the Bureau does not result in an "informal adjudication" of the claim, as described in § 01.-11 of the Regulations and § 19(c) of the Act until the deputy commissioner has determined "all questions in respect of such claim" and has filed and served a compensation order. The action of the parties and the claims examiners cannot be considered an agreement of *settlement* to waive or release claimant's

rights, but is merely an *interlocutory* agreement as to certain facts *assumed* to exist at the time. It is merely an interlocutory step in a pending case, which was begun by the filing of "a claim", and will be finally concluded only by a determination by the deputy commissioner and the filing of "a compensation order" after informal or formal adjudication under § 19(c) of the Act and § 01.11 and § 31.12 of the Regulations.

Informal adjudication cannot be made by approval of agreed settlements by the interested parties in the sense in which the carrier uses the term. Informal and formal adjudications of claims both require, in compliance with § 19 of the Act, that the deputy commissioner "determine all questions in respect of such claim" and file and serve a compensation order. Permanently binding *settlements,* as contrasted with *interlocutory agreements,* are expressly prohibited by § 15(b) and § 16 of the Act, except with Secretarial approval, and then only to the limited extent prescribed explicitly in 20 C.F.R. § 31.26. The carrier is in error in comparing the power of a claims examiner to that of a district judge in a Jones Act action for damages, for not even the deputy commissioner may make a final award for full damages for all past and future pain and suffering, loss of wages and consequential damages. Compensation is only a scheme for providing injured workmen medical care and subsistence payments. No adjudication under compensation acts is final in the sense to which the carrier refers. All determinations are subject to modification: forever, as to the carrier; for one year after the final payment after a deputy commissioner's award as to the injured worker.

The administrative effect of the carrier's view that recommendations of claims examiners, despite the contrary requirement of § 19 of the Act, should constitute "informal adjudicatory processes" would be far-reaching. It would destroy the existing interlocutory claim procedures by which all but a few claims are amicably disposed of without either informal or formal adjudication. If such recommendations were to constitute final adjudicatory action, however informal, they would be subject, under the Administrative Procedure Act, 5 U.S.C. 551(6) and (7); 702–706, to the requirement of a record containing substantial evidence and to judicial review in any "applicable form of action." For such review proceedings no limitation period is prescribed. Claimants would be able to assert many years later that there was no substantial evidence before the examiner and that they were overreached by carriers. This would be destructive of the Act's self-executing principle and the procedures prescribed in § 01.11 and § 31.12 of the Regulations. It would, moreover, place review of the vast majority of all litigated compensation cases outside the provisions of § 921 of the Act.

The contention of the carrier, that where cases are closed or reclosed as inactive without adjudication by a final order of a deputy commissioner they have been finally adjudicated, would be in clear violation of § 01.11(a) of the Regulations and § 19(a) of the Act. The annual reports of the Bureau show that in each year some 100,000 cases are "closed" or "reclosed" without proceeding to such final adjudication. These unadjudicated cases are only closed in the sense that the files are retired as inactive. Unadjudicated claims remain pending, subject to reopening, until they have been finally determined and adjudicated by a deputy commissioner as required by § 19 of the Act.

The carrier's second assertion is that the provisions of § 22 of the Act for modification of awards apply to every case where there has been any voluntary payment of compensation, whether or not there is a changed condition or mistake in the deputy commissioner's determination. This, the carrier asserts, requires every employee to file an additional claim within one year after any stoppage of voluntary payments although the employee already has on file a timely original claim, still pending un-

determined by the deputy commissioner. This assertion of the carrier disregards the plain terms of the first sentence of § 22 which restrict modification to only cases involving changed condition or mistake in a "determination of fact by the deputy commissioner."

The terms of § 22 thus refer back to § 19(a), which grants to the deputy commissioner exclusive "full power and authority to determine all questions" in respect of claims. For § 22 to apply, therefore, there must have first been either an informal or formal determination and adjudication *by the deputy commissioner* within the meaning of § 19(c). Absent such a previous *determination by the deputy commissioner* (not by a claims examiner), § 22 has nothing upon which to operate. There is nothing for "modification". The one-year statute of limitations on the power to modify cannot be translated into an addition to § 13(a) of a requirement that multiple claims must be filed by the employee each time voluntary payments are stopped.

The Act does not contemplate the filing and consideration of a succession of claims to be renewed after each stoppage of voluntary payments. It provides in § 14 that compensation shall be paid "periodically" and "promptly" in place of wages, and requires the employer to notify the deputy commissioner if payments are stopped, clearly indicating that "a claim" once filed shall cover all disabilities and eventualities until the case is finally acted upon. It provides in § 13(a) and § 19(a) for the filing of "*a claim* for compensation", which *one claim,* once filed, covers all consequences of the injury reported until that *one claim* is finally adjudicated. Were this not so, an award could be made only for that period of disability which preceded the date of each successive claim filed; employees would then be required to file a new claim for each week of disability. If they did not re-file at least once each year their pending, timely claim would be forfeited.

The foregoing is contrary to the terms of the Act. Once filed, a claim remains pending until finally acted upon. Section 14(h) requires the deputy commissioner, if the claim is controverted or payment stopped, to take such action as will protect the rights of the parties. Section 19(c) requires him to hold a hearing if requested. But whether acting under § 14(h) or § 19(c), only the deputy commissioner, and not a claims examiner, is given by § 19(a) "full power and authority to hear and determine all questions" concerning the claim. Only he must "by order reject the claim or make an award", and without his determination there is nothing susceptible of modification under § 22 any more than of judicial review under § 21(b).

The effect on the administration of the Act, if the carrier's view were to be accepted and each stoppage of voluntary payments would require the employee to file an additional claim notwithstanding he already has a timely filed claim remaining unadjudicated, would be administratively unworkable. Under such a view an employer could after a short period discontinue voluntary payments on a timely filed claim, give the disabled workman light employment for a year or more following the date of last payment of compensation, and then discharge him. The worker's right to compensation would then be forever barred because of the limitations in § 22, even though there was pending a timely filed but unadjudicated claim for compensation.

In short, the assertions of the carrier are in clear contradiction of the Bureau's Regulations and the terms of the Act, and would destroy the purposes of the Act and its administration.

Sincerely,

(Signed) JOHN E. STOCKER
         JOHN E. STOCKER
         Assistant Director
         Office of Longshoremen's and
         Harbor Workers' Compensation