INTERCOUNTY CONSTRUCTION COR-
PORATION and Hartford Accident &
Indemnity Company

v.

Noah C. A. WALTER, Deputy Commis-
sioner, U. S. Department of Labor, and
Bureau of Employees Compensation,
Appellants,

Mary Jones, Intervenor.

No. 73–1569.

United States Court of Appeals,
District of Columbia Circuit.

Argued April 15, 1974.

Decided July 3, 1974.

━━━━━━━━━━━━

Leavenworth Colby, Sp. Asst. Atty. Gen., U. S. Dept. of Justice, with whom George M. Lilly, Atty., U. S. Dept. of Labor, was on the brief, for appellant. Harold H. Titus, Jr., U. S. Atty. at the time the record was filed and Ellen Lee Park, Asst. U. S. Atty., also entered appearances for appellant.

John C. Duncan, III, Washington, D. C., for appellees.

Maurice C. Goodpasture, Arlington, Va., was on the brief for intervenor.

Before LEVENTHAL and ROBB, Circuit Judges, and SOLOMON,* United States Senior District Judge for the District of Oregon.

SOLOMON, District Judge:

The issue presented in this appeal is whether an injured workman who filed a timely compensation claim and whose employer paid compensation without awaiting an award is barred by Section 22 of the Longshoremen's and Harborworkers' Act (Act), 33 U.S.C. § 922, from seeking additional compensation because he did not file a second claim within one year after his employer stopped paying compensation.

Charles E. Jones (claimant) was injured on July 19, 1960, while working for Intercounty Construction Corporation (employer) in the District of Columbia. On August 12, 1960, he filed a claim for permanent disability under the District of Columbia Compensation Act, 45 Stat. 600, 36 D.C.Code 36–501, with the deputy commissioner of the Bureau of Employee Compensation of the Department of Labor.[1] The claim was filed within the period permitted by Section 13 of the Act.[2] The employer's insurance carrier, Hartford Accident & Indemnity Company (carrier), filed an answer on August 25, 1960, admitting that claimant was injured in the course of his employment but denying that he was permanently disabled to the extent stated in his claim. The carrier[3] also filed a notice that it had started to pay compensation without awaiting an award by the deputy commissioner, a procedure required by Section 14(a)[4] of the Act when liability is not controverted. The claimant was paid $54.00 per week, the amount payable for total disability.

On January 6, 1965, the carrier filed a notice that it was controverting Jones' claim on the grounds of wages, extent of disability, and unauthorized medical care. On April 27, 1965, the carrier informed the deputy commissioner that it was reducing claimant's compensation to $27.00 per week, the rate for 50 per cent temporary partial disability.[5] On June 1, 1965, the deputy commissioner noti-

─────────

\* Sitting by designation pursuant to 28 U.S.C. § 294(d).

1. The District of Columbia Compensation Act incorporates by reference the Longshoremen's and Harborworkers' Act, 33 U.S.C. § 901 et seq., as amended. The deputy commissioners of the Bureau of Employee Compensation of the Department of Labor administer both acts.

2. Section 13(a) provides:

    *Time for filing of claims*

    Sec. 13. (a) The right to compensation for disability under this chapter shall be barred unless a claim therefor is filed within one year after the injury, . . . except that if payment of compensation has been made without an award on account of such injury or death a claim may be filed within one year after the date of the last payment.

3. The term "carrier" shall include "employer" because in this case the interests of the carrier and the employer are identical.

4. Section 14(a) provides:

    (a) Compensation under this chapter shall be paid periodically, promptly, and directly to the person entitled thereto, without an award, except where liability to pay compensation is controverted by the employer.

5. The change from total permanent to temporary partial disability limited the carrier's liability. Under the Act the maximum payable for partial disability was $17,280.00. 33 U.S.C. § 914(m) (1960). There is no maximum liability for total permanent disability.

fied the claimant that if he wanted to contest the reduction in payments he should see an attorney. On August 26, 1966, a claims examiner held a hearing at which claimant was present. The conference was adjourned without any recommendation on claimant's renewed claim for total disability benefits.

On January 23, 1968, the carrier stopped paying compensation because it had paid claimant $17,280.00, its maximum liability for any condition other than total permanent disability. On February 11, 1970, claimant requested a hearing on his claim for total permanent disability. Hearings were held on December 21, 1970, and January 14, 1971. On May 24, 1971, Deputy Commissioner Walter entered an order rejecting the claim because the request for a hearing was made more than one year after the carrier's final payment. He held that the claim was barred by Section 22 of the Act, 33 U.S.C. § 922.

Claimant filed an action in the district court to challenge the decision. Shortly thereafter, the Bureau of Employee Compensation concluded that the deputy commissioner's decision was incorrect and agreed to a consent decree remanding the case to the deputy commissioner for further proceedings.[6] On February 8, 1972, the deputy commissioner entered an order awarding claimant compensation for permanent total disability.

Both the employer and the carrier brought this action under 33 U.S.C. § 921(b) to enjoin the deputy commissioner from enforcing the order. The district court granted summary judgment against the deputy commissioner. It held that the claim was barred by Section 22 of the Act. The court relied on Strachan Shipping Co. v. Hollis, 460 F. 2d 1108 (5th Cir. 1972), cert. denied, sub nom. Lewis v. Strachan Shipping Co., 409 U.S. 887, 93 S.Ct. 114, 34 L.Ed.2d 144 (1972).

The carrier did not request a hearing before the deputy commissioner during the lengthy administrative proceedings, nor did it ask the deputy commissioner to enter a final compensation order. No compensation order was entered prior to Deputy Commissioner Walter's order of May 24, 1971, which was superseded by his order of February 8, 1972.

Deputy Commissioner Walter appealed. Mary Jones, guardian of the incompetent claimant, intervened.

The basic time limitations on the filing of claims are embodied in Section 13 of the Act, which requires filing within a year after injury or after the last payment of compensation, if compensation has been paid without an award. A further time limitation on action by the deputy commissioner is contained in Section 22, which provides:

### Modification of Awards

Upon his own initiative, or upon the application of any party in interest, on the ground of a change in conditions or because of a·mistake in a determination of fact by the deputy commissioner, the deputy commissioner may, at any time prior to one year after the date of the last payment of compensation, whether or not a compensation order has been issued, or at any time prior to one year after the rejection of a claim, review a compensation case in accordance with the procedure prescribed in respect of claims in section 919 of this title, and in accordance with such section issue a new compensation order. . . . Such new order shall not affect any compensation previously paid

.  .  .  .

The parties, like the Fifth Circuit in *Strachan Shipping*, have focused the issue almost exclusively on Section 22. We will consider the interpretation of Section 22, taking into account its purpose and legislative history. Neverthe-

---

6. Neither the employer nor the carrier were parties to the district court action and neither consented to the remand.

less, we think it is important to stress the bearing of Section 13 on that interpretation, and to note that the claim of the injured employee was filed within one year of his injury as prescribed by Section 13. The issue for the court is not merely the meaning of Section 22 taken by itself, but the proper relationship of Sections 13 and 22 as elements of a sensible and coherent pattern of the statute as a whole.

The carrier contends that the order of February 8, 1972, was barred by the "plain language" of Section 22 because claimant did not request additional compensation until more than one year after the carrier stopped making compensation payments. The deputy commissioner contends that the time limitation in Section 22 applies only to the modification of a final order and does not affect his authority to issue an original order for a claim filed within the time permitted by Section 13.

The deputy commissioner's interpretation of Section 22 as applying only to a modification of a compensation order and not as an additional time limitation on the original filing of a claim is supported by the section's statutory title, "Modification of Awards",[7] and by its reference to an order issued under the section as a "new compensation order". These clauses indicate that the section applies to cases in which a compensation order has already been entered. Similarly, the inclusion of "a mistake in a determination of fact by the deputy commissioner" as a ground for modification of an award implies that a prior compensation order has been entered, since findings of fact are required only in compensation orders. *See* 20 C.F.R. §§ 31.12, 31.13 (1972).

Nevertheless, there is language in Section 22 which is directed to a situation in which no prior final order has been entered. The section provides that the deputy commissioner may review a case "at any time prior to one year after the date of the last payment of compensa-tion, whether or not a compensation order has been issued . . . . " This passage could mean that Section 22 applies even if no compensation order has been entered, or that it applies regardless of whether an order has been entered as of "the date of the last payment of compensation". The reference to "a change in conditions" as a ground for modification of an award is also ambiguous. It could refer to conditions found by the deputy commissioner to exist in a prior compensation order, or it could mean conditions which existed when payments were made without awaiting an order.

Since the language of Section 22 is ambiguous, we must look to other sources to determine whether Congress intended the time limitation in Section 22 to apply to cases in which no final order was made.

Section 22, as enacted in 1927, permitted the deputy commissioner to review an order "at any time during the term of an award and after the compensation order in respect of such award has become final . . . . " Act of Mar. 4, 1927, c. 509, § 22, 44 Stat. 1437. Because of administrative delays and the Act's emphasis on voluntary compliance, carriers often not only paid compensation but also completed making payments before an order was entered. The deputy commissioner was unable to change the amount due the claimant because the "term of the award" had expired with the last payment by the carrier. United States Employees' Compensation Commission, Seventeenth Annual Report, at 18 (1933); Mille v. McManigal, 69 F.2d 644 (2d Cir. 1934); F. Jarka Co., Inc. v. Monahan, 29 F.2d 741 (D.Mass.1928).

In its Seventeenth Annual Report, the United States Employees' Compensation Commission complained that "Section 22 of the Longshoremen's Act provides [the deputy commissioner] with less authority to do justice to the parties than is contained in any provision for a similar

---

7. An "award" is a payment made under a compensation order. 33 U.S.C. § 919(e) (1972).

purpose in any State compensation law." *Supra* at 18. The Commission recommended that Section 22 be amended to read as follows:

> Sec. 22 Upon his own initiative, or upon the application of any party in interest, on the ground of a change in conditions, the deputy commissioner may at any time review a compensation order . . . [and] issue a new compensation order . . . , but such new order shall not affect any compensation paid or due under authority of the prior order. The power and jurisdiction of the deputy commissioner over each case shall be continuing, with authority, and after a hearing if applied for, to make such modification or change by a new compensation order whenever he may determine the interests of justice require a modification of an order formerly issued. *Supra* at 18.

The Commission's reference to a "new order", "the prior order", and "modification of an order formerly issued" indicates that the Commission did not recommend that Section 22 be amended to apply to cases in which no final order had been entered.

In 1934, Congress amended Section 22 "to broaden the grounds on which a deputy commissioner can modify an award and also while strictly limiting the period, extend the time within which such modification may be made." H.R. Rep. No. 1244, 73d Cong., 2d Sess., April 16, 1934, at 4. The amendment was "in line with the recommendation of the Commission except that it limits to 1 year after the date of the last payment of compensation the time during which such modification may be made." *Id.* The amendment deleted the original time limitation and substituted "at any time prior to one year after the date of the last payment of compensation, whether or not a compensation order has been issued." The phrase "whether or not a compensation order has been issued" was intended to make clear that the deputy commissioner has the authority to modify awards, within the pre-

scribed period, even in cases in which the original compensation order was issued after all payments have been made to the claimant. The amendment did not change the purpose of the section, which, according to the House Report, was to allow deputy commissioners to "modify an award".

In 1938, Section 22 was amended to permit the deputy commissioner to make an award in a case in which he had originally rejected the claim. Act of June 25, 1938, c. 685, § 10, 52 Stat. 1167. The House Report said that "[t]he purpose of this amendment is to extend to such cases the same provisions which now apply in connection with other cases *finally acted upon by the deputy commissioner.*" (emphasis supplied) H.R. Rep.No.1945, 75th Cong., 3d Sess., March 14, 1938, at 9.

█ In our view, the legislative history shows that Congress intended Section 22 to apply only to cases in which the deputy commissioner had "finally acted" by issuing or denying a compensation order. The amendment was not intended to impose an additional time barrier to recovery by claimants who filed within the time permitted by Section 13, and were still awaiting an order on the filed application.

The Fifth Circuit came to the opposite conclusion. A divided panel of that court held in Strachan Shipping Co. v. Hollis, *supra*, that Section 22 barred timely filed claims which were not refiled within one year after the last payment of compensation, even when no compensation order had been entered. The court did not discuss the legislative history and relied on the "plain language of Section 22". The *Strachan* majority said that:

> It would not be equitable, in our opinion, for courts to approve the deputy commissioner's vigorous efforts to secure voluntary compliance with the Act on the part of employers and their insurers while simultaneously approving the deputy commissioner's refusal to terminate compensation cases,

by means of formal orders as envisioned in Section 22 of the Act, when voluntary payments are made.

.   .   .   .   .   .

It may well be that our decision . . . will make it difficult for injured employees to obtain adequate compensation commensurate with the full extent of their physical disabilities. Should that eventuality occur, it would be for Congress either to lengthen Section 22's limitations period or to provide other means to postpone the running of the statute of limitations. 460 F.2d at 1116.

■ We reject the reasoning of the Fifth Circuit. A carrier at any time can compel the deputy commissioner to hold a hearing on a pending claim and determine its liability within twenty days after the hearing. *See* 33 U.S.C. § 919(c); 5 U.S.C. § 706(1); *cf.* Atlantic & Gulf Stevedores, Inc. v. Donovan, 274 F.2d 794 (5th Cir. 1960). There is no inequity in continuing pending claims when the carrier can compel a prompt determination.

Here the carrier did not ask for either a formal hearing or the entry of a compensation order, even though such an order would have started the one-year period in which modifications are permitted by Section 22.

The *Strachan* majority did not follow a long-standing and rational interpretation of the Act by the agency charged with the administration of the Act. The regulation issued under Section 22, promulgated on May 31, 1938, interprets Section 22 as affecting only those cases in which a final order was entered; it does not refer to cases in which an order

was not issued.[8] We are unwilling to join the Fifth Circuit in setting aside an agency interpretation that has stood for more than 35 years. *See* Ainsworth, J., concurring and dissenting in *Strachan, supra* at 1117; *see also* Udall v. Tallman, 380 U.S. 1, 16, 85 S.Ct. 792, 13 L. Ed.2d 616 (1965).

■ A timely filed claim remains pending until a compensation order is entered by the deputy commissioner. *See* Lumber Mutual Casualty Ins. Co. of N.Y. v. Locke, 60 F.2d 35 (2d Cir. 1932); American Mutual Liability Ins. Co. of Boston v. Lowe, 85 F.2d 625 (3d Cir. 1936).[9] Appellant argues that a claim is analogous to a complaint filed under the Federal Rules of Civil Procedure, which remains pending until disposed of by an order of court. We think the analogy has merit. It would be anomalous to require an injured workman to refile a claim in order to preserve his right to compensation when a plaintiff in a civil action does not have to refile his complaint in order to preserve his action. We also believe that such a requirement would contradict the statutory command that the deputy commissioner shall not be bound by "technical or formal rules of procedure" in proceedings under the Act. 33 U.S.C. § 923(a).

The Fifth Circuit's holding bars timely filed unadjudicated claims unless claimants file new claims within one year after their carriers stop paying compensation. Carriers may find it to their advantage to stop payments frequently in the hope that claimants not familiar with the agency's regulations would neglect to file another claim.[10]

---

8. The regulation refers only to "application[s] . . . for modification of an award". 20 C.F.R. § 31.16(a) (1972).

9. Appellees cite *Lowe* for the proposition that the one-year limitation in Section 22 applies regardless of whether a compensation order has been issued. The *Lowe* court said in dicta that a claim would be barred by Section 22, as amended in 1934, "if we assume that the memorandum . . . was a final order within the terms of the statute".

The court did not say that the claim would be barred if no final order had been entered.

10. *See* letter from John E. Stocker, Assistant Director of the Office of Longshoremen's and Harborworkers' Compensation, to Leavenworth Colby, August 6, 1971, appended to the opinion of Ainsworth, J., concurring in part and dissenting in part in *Strachan, supra* at 1117.

In *Strachan* the carrier stopped paying compensation four times and stopped paying

The Longshoremen's and Harborworkers' Act "must be liberally construed in conformance with its purpose, and in a way which avoids harsh and incongruous results." Voris v. Eikel, 346 U.S. 328, 333, 74 S.Ct. 88, 92, 98 L.Ed. 5 (1953); *see* B & P Steamboat Co. v. Norton, 284 U.S. 408, 52 S.Ct. 18, 76 L.Ed. 366 (1932). It would be harsh and incongruous to force a claimant to refile an unadjudicated claim each time his carrier terminated payments to avoid having his right to compensation permanently barred.

We hold that Section 22 applies only to cases in which a final compensation order has been entered or denied. A claimant in order to preserve his claim, is not required by Section 22 to refile his timely filed but unadjudicated claim after a carrier stops paying compensation.

All parties agree that appellees are liable for claimant's medical expenses.

The judgment of the district court is reversed. The case is remanded for further proceedings consistent with this opinion.

---

medical benefits twice during a fourteen-year period. Although the repeated termination of benefits in *Strachan* may not be typical, it does show that claimants may be forced to refile claims repeatedly if each termination starts the limitations period to run.