Robert WILLIAMS and Alaska Workmen's
Compensation Board, Appellants,

v.

SAFEWAY STORES and the Travelers
Insurance Co., Appellees.

No. 1992.

Supreme Court of Alaska.

Sept. 3, 1974.

William M. Erwin, Anchorage, for appellants.

Timothy M. Lynch, Kenneth P. Jacobus, Hughes, Thorsness, Lowe, Gantz & Clark, Anchorage, for appellees.

Before RABINOWITZ, Chief Justice, and CONNOR, BOOCHEVER and FITZGERALD, Justices.

OPINION

BOOCHEVER, Justice.

Once again we are called upon to seek the meaning of the provisions of the Alaska Workmen's Compensation Act which establish a time-bar to the claims of injured laborers against employers and their insurers.[1] The parties here seek to wage

1. See, e. g., W. R. Grasle Co. v. Alaska Workmen's Compensation Board, 517 P.2d 999 (Alaska 1974); Employers' Liability Assurance Corp. v. Bradshaw, 417 P.2d 600 (Alaska 1966); Morrison-Knudsen Co. v. Vereen, 414 P.2d 536, 541 (Alaska 1966).

semantic war over the single phrase in AS 23.30.130(a) [2] which provides that the one-year limitation upon reopening of cases before the Alaska Workmen's Compensation Board commences upon the "last payment of compensation". We find dispositive a second issue, whether the board reserved jurisdiction over the permanent disability elements of Williams' claim in its 1968 decision in this case.

Robert Williams was employed in the stockroom of a Safeway store in Anchorage. On January 2, 1964, he tripped over an obstruction in the stockroom and fell, injuring his back. Safeway, through its compensation carrier, voluntarily paid temporary total disability compensation and medical benefits for a short time. A dispute arose regarding further payments, and an order of the Alaska Workmen's Compensation Board issued July 19, 1966 awarded temporary total disability and 15 percent permanent partial disability compensation. Williams moved to Florida, and, after suffering further difficulties with his back, petitioned the board to modify the 1966 award. During the pendency of that petition, the condition of Williams' back so deteriorated that a spinal fusion operation was performed. At the time of the hearing on the petition to modify the 1966 order, Williams' doctors were unable to rate his degree of permanent disability. The board issued an order on January 31, 1968 awarding Williams compensation for past and continuing temporary total disability. The carrier's payments under the 1968 order reached the then-applicable limitation of $17,000 [3] on all types of workmen's compensation awards excepting permanent to-

tal disability while Williams was still totally disabled and unrated for permanent disability. Williams was informed of the reaching of the limit by the director of the Workmen's Compensation Division of the Department of Labor.

Although Safeway's insurer continued to provide full medical benefits to Williams, the last payment of compensation under the 1968 order was made on April 9, 1969.

On April 20, 1972, Williams filed a letter asking the board to "open" his case for consideration of permanent total disability compensation. Safeway controverted the claim, asserting that under AS 23.30.-130(a), the period during which Williams' award could be reopened or modified expired one year after the April 1969 payment. After a hearing, the board granted Williams' claim for permanent total disability.

Safeway timely appealed the board's order to the superior court on a number of grounds, including the limitation of AS 23.30.130(a) which provides that because of a change in conditions or a mistake of fact, the board may issue a new compensation order. The section requires that the application for modification be made "before one year after the date of last payment of compensation". Safeway moved for summary judgment based upon the limitation of AS 23.30.130(a), and the judgment was granted without findings of fact or conclusions of law. Williams filed a timely appeal to this court.

This case has been complicated at all levels by an unfortunate confusion of the

2. AS 23.30.130(a) provides in full:
    Upon its own initiative, or upon the application of any party in interest on the ground of a change in conditions or because of a mistake in its determination of a fact, the board may, before one year after the date of the last payment of compensation, whether or not a compensation order has been issued, or before one year after the rejection of a claim, review a compensation case in accordance with the procedure

prescribed in respect of claims in § 110 of this chapter. In accordance with § 110 of this chapter the board may issue a new compensation order which terminates, continues, reinstates, increases, or decreases the compensation, or award compensation.

3. § 3 ch. 193 S.L.A.1959 [former AS 23.30.-155(*l*)]. The current limitation of AS 23.-30.155(*l*), established by a 1972 amendment, is $30,000.

limitation of actions on initial claims[4] with that which applies to reopenings.[5] Only two issues are presented upon the facts: (1) whether providing medical benefits to an injured workman after the disability compensation limit of the relevant order or statute has been reached is a "payment of compensation" from which the one-year reopening period of AS 23.-30.130(a) may be dated; and (2) whether the board's 1968 decision in this case reserved jurisdiction to decide the issue of permanent disability so that the limitation period of AS 23.30.130(a) never applied to Williams. Our resolution of the second issue makes unnecessary a consideration of the first.[6]

We begin our analysis of the board's reservation of jurisdiction from the two points of agreement of the parties on this

4. AS 23.30.105(a) provides in full:

The right to compensation for disability under this chapter is barred unless a claim for it is filed within two years after the employee has knowledge of the nature of his disability and its relation to his employment and after disablement. However, the maximum time for filing the claim in any event other than arising out of an occupational disease shall be four years from the date of injury, and the right to compensation for death is barred unless a claim therefor is filed within one year after the death, except that if payment of compensation has been made without an award on account of the injury or death, a claim may be filed within two years after the date of the last payment. It is additionally provided that, in the case of latent defects pertinent to and causing compensable disability, the injured employee has full right to claim as shall be determined by the board, time limitations notwithstanding.

Since Williams' disability is the result of a progressive deterioration of the condition of his back, caused by the single 1964 accident, there never was a serious contention that the 1972 letter constituted a new claim. *See* Adcox v. Northville Laboratories, Inc., 381 Mich. 600, 166 N.W.2d 460, 464–465 (Mich.1969); 3 Larson, Workmen's Compensation Law § 81.31 at 333.

5. AS 23.30.130(a) is quoted in full, note 2 *supra*. Williams has implied, though not seriously contended, that the "knowledge or notice" commencement date of AS 23.30.105 (a) could be applied to AS 23.30.130(a) by incorporation through AS 23.30.110(a). Our disposition of the case on other issues makes consideration of this contention unnecessary.

6. Although we need not dispose of the issue, we deem it appropriate to summarize the difficulties in determining whether "compensation" in AS 23.30.130(a) includes medical payments. We do so because we believe the issue is peculiarly ripe for legislative resolution. Initially, AS 23.30.265(8) defines "compensation" for the purposes of the Act without mention of medical benefits, and subpart (16) defines "medical and related benefits"

in mutually exclusive language, thus apparently foreclosing arguments like that raised by Williams. However, other sections of the Act, AS 23.30.045(a) and 23.30.010 being the foremost examples, use the word "compensation" so that the only reasonable reading of the word would include medical benefits. The United States Supreme Court once relied upon similar definitions in the Longshoremen's and Harbor Workers' Compensation Act to hold that "compensation" does not include medical benefits for the purposes of tolling the limitation on initial claims. Marshall v. Pletz, 317 U.S. 383, 390–391, 87 L. Ed. 348, 352–353, 63 S.Ct. 284, 288 (1943). Besides not being strictly applicable to reopenings, the case has been heavily criticized, and it is rarely followed. Dexter v. Wilde Tool Co., 188 Kan. 816, 365 P.2d 1092, 1094 (1961); Cowell v. Minnegas Co., 286 Minn. 535, 176 N.W.2d 84, 85 (1970); Knopp v. Gutterman, 258 Minn. 33, 102 N.W.2d 689 (1960); Robinson v. Hamilton Avenue Hospital, 34 A.D.2d 1059, 312 N.Y.S.2d 41, 42 (1970); Schmitt v. Alpha Delta Phi Fraternity House, 33 A.D.2d 1082, 307 N.Y.S.2d 780 (1970); Smith v. City of New York, 23 A.D.2d 608, 256 N.Y.S.2d 622, 623 (1965). Decisions from other jurisdictions which are directly in point do not agree. *Compare* Food Fair Stores, Inc. v. Tokayer, 167 So.2d 563, 564 (Fla.1964) *with* Shainberg's Black & White Store v. Prothro, 238 Miss. 444, 118 So.2d 862, 864 (Miss.1960); *see also* Heflin v. Pepsi Cola Bottling Co., 244 Ark. 195, 424 S.W.2d 365, 366 (1968) and Chanticleer Skyline Room, Inc. v. Greer, 19 Md.App. 100, 309 A.2d 638, 642 (1973). One federal case which at first blush is suggestive of the proper result appears to be irrelevant upon close analysis. Strachan Shipping Co. v. Hollis, 460 F.2d 1108 (5th Cir. 1972), cert. denied, 409 U.S. 887, 93 S.Ct. 114, 34 L.Ed.2d 144 (1972), reh. denied, 409 U.S. 1002, 93 S.Ct. 307, 34 L.Ed.2d 263 (1972). In essence the employer's "stale claim" argument (*see* 3 Larson, Workmen's Compensation Law § 81.10 at 316) squares off against the claimant's call or a liberal construction of the Act in order to effect it beneficent purpose of compensating the injured laborer.

issue: first, that the board has the power to retain jurisdiction over a case, thus obviating further action on the part of the claimant to avoid the time limitation of AS 23.30.130(a);[7] and, second, that the board did not expressly reserve jurisdiction over Williams' permanent disability claim in its 1968 order or find that it had done so in its 1972 order.[8] We must therefore determine whether the board impliedly reserved jurisdiction by the form of its 1968 order.

The general context of the 1968 proceeding has been explained; it is important, however, to review in greater detail the factors which animated the 1968 order. Williams' 1967 petition to modify the 1966 award was filed prior to the spinal fusion. Safeway opposed that petition because the medical reports filed with it indicated no change in the 15 percent permanent partial disability rating. In November 1967, before the hearing on the modification petition, Williams underwent a spinal fusion, and additional medical reports were filed. The orthopedist who performed the fusion filed the following summary of Williams' condition with the board:

> [Williams], of course, has not fused solidly and, of course, has not reached his maximum return of function and therefore cannot be rated as to his disability. In all probability, the earliest time when such a rating would be practical (maximum return of function) would be about one year from the time of this operation.

Williams' regular physician filed a similar but less detailed report with the board, concluding, "At this time I do not know the degree of permanent partial disability." The board's December 11, 1967 hearing on the reopening petition amounted to little more than argument by counsel regarding the medical reports. Neither Williams nor any of the physicians were called as witnesses. Thus, the only evidence before the board regarding Williams' permanent disability was that of medical reports, both of which anticipated permanent disability but found it presently unratable.

■■ The board accepted the truth of the medical reports. It stated in its conclusions of law that:

> The Board concludes that there exists a change of conditions from Dr. Worsham's 15 percent opinion in 1966 to his present opinion *that a disability rating cannot be given until a later date.* . . . The Board finds it reasonable to believe that the additional operation and spinal fusion will change the disability rating it awarded previously to the applicant [emphasis added].

The board formally ordered:

> That the petition for modification is granted, and the Board's July 19, 1965 order is hereby modified. The applicant's condition of permanent partial disability has changed from 15 percent as of February 7, 1966 *to an undetermined degree,* and further that the applicant's

S.L.W. v. Alaska Workmen's Compensation Board, 490 P.2d 42, 43 (Alaska 1971). We note that under the employer's contention as a result of AS 23.30.105(a) and W. R. Grasle Co. v. Alaska Workmen's Compensation Board, 517 P.2d at 1002–1003, the individual who filed *no* initial claim would be entitled to file his claim for the serious later disability within two years of his knowledge or notice thereof; yet another claimant with identical injury who by pure chance filed an initial claim which was reduced to an order of the board would be barred from asserting the later claim. It is for these reasons that we believe legislative action to be appropriate.

7. *See. e. g.,* Boden v. City of Hialeah, 132 So.2d 160 (Fla.1961); Palmeri v. Riggs-Sar-

gent, Inc., 147 Ind.App. 430, 261 N.E.2d 887 (1970); Pratt v. Central Upholstery Co., 252 N.C. 716, 115 S.E.2d 27 (1960); Craft v. State Compensation Director, 149 W.Va. 28, 138 S.E.2d 422 (1964). *See generally* 3 Larson, Workmen's Compensation Law § 81.53:
> If, either by the form of the commission's order or by express statutory provision, continuing jurisdiction has been reserved over an award, it does not achieve finality and is therefore not subject to the limitations on reopening applicable to final awards. . . .

8. Neither did the board acknowledge that it had before it a petition for reopening or modification.

condition changed to temporary total disability on March 4, 1967 [emphasis added].

In summary, all the evidence before the board, which the board unequivocally accepted, demonstrated that Williams would have a changed permanent disability, but that the degree could not be determined for at least 11 months after the board hearing. In its evidentiary context, the board's quoted language verges upon an express reservation of jurisdiction. Short of the phrase, "we reserve jurisdiction to determine permanent disability", the board could not have indicated more clearly that further compensation proceedings were contemplated as soon as Williams' condition stabilized. Safeway relies on the portion of the 1968 order which set Williams' compensation rate:

> The Board concludes . . . that the defendant shall pay the applicant temporary total disability compensation at the rate of $93.60 a week . . . until applicant's condition does reach maximum improvement or that he is able to work or that $17,000 has been paid in temporary total and permanent partial disability compensation. . . .

Safeway would read the above-quoted passage as a conclusive, final award of $17,000. We doubt such an argument would have arisen had Williams recovered shortly after the board order. He then would not have been entitled to receive the full $17,000. The $17,000 maximum only rendered meaningless a rating of permanent *partial* disability because that form of compensation is added to the temporary total disability compensation in determining the AS 23.30.155 (*l*) maximum. But the attainment of the $17,000 plateau did not foreclose the board's *power* to determine permanent disability—partial or total—under its 1968 order. There simply was no reason for either party to seek the exercise of that power until the $17,000 limit was expunged by the total disability rating. Safeway was not entitled to a final and conclusive order in 1968; an attempt to rate permanent disability would have been speculative and wrongful as to both parties.[9]

■ We conclude that the board by implication reserved in its 1968 order the right to decide the degree of Williams' permanent disability when that disability became ascertainable. Williams' letter requesting that his case be "open[ed] . . . for consideration for permanent total disability" called upon that dormant power; it was not a petition for modification or reopening under AS 23.30.130(a), and was not subject to the one-year limitation of that statute. In so holding we follow the example of other courts which have found implied reservations of jurisdiction where the intention to retain power over a case may have been less clear than here.[10] In one case, where the modification-of-award statute was substantially similar to Alaska's,[11] the mere language "Whether claimant will have any permanent disability cannot be determined at this time" appears to have been sufficient to reserve jurisdiction.[12] Whether jurisdiction is impliedly reserved is inherently a case-by-case determination. We rely upon decisions of other courts solely for the proposition that jurisdiction may be impliedly reserved; we do not intend to open to further proceedings every compensation case where some part of a claim was rejected as speculative. Only in the exceptional case do we anticipate that an implied reservation of jurisdiction may be found.

9. *See* Sanz v. Eden Roc Hotel, 140 So.2d 104, 105–106 (Fla.1962).

10. Boden v. City of Hialeah, 132 So.2d 160 (Fla.1961) ; Palmeri v. Riggs-Sargent, Inc., 147 Ind.App. 430, 261 N.E.2d 887 (1970) ; Pratt v. Central Upholstery Co., 252 N.C. 716, 115 S.E.2d 27 (1960).

11. For a statutory comparison, *see* Superior Home Builders v. Moss, 70 So.2d 570, 571 (Fla.1954), a predecessor to *Boden*.

12. Boden v. City of Hialeah, 132 So.2d at 161.

Here we decide only that in its evidentiary context the language of the board's 1968 order reserved jurisdiction to decide the degree (including totality, of course) of Robert Williams' permanent disability.

The board found that Williams sought relief promptly after learning of his permanent total disability. There is no issue of laches or any other time limitation in the case. The superior court therefore erred in finding Williams' claim time-barred. Safeway appealed the board's decision to the superior court upon several grounds not disposed of in the summary judgment. Those issues have played no part in the decision on appeal. We must therefore remand this case for further proceedings not inconsistent with this opinion. The judgment of the superior court is reversed, and the case is remanded.

ERWIN, J., not participating.