605 A.2d 627

**Woodrow W. VEST,**

v.

**GIANT FOOD STORES, INC., et al.**

**No. 875, Sept. Term, 1991.**

Court of Special Appeals of Maryland.

April 30, 1992.

---

Luiz R.S. Simmons, Silver Spring, for appellant.

Christopher R. Costabile (Law Offices of Conrad A. Fontaine, on the brief), Fairfax, Va., for appellees.

Argued before BISHOP, ALPERT and HARRELL, JJ.

HARRELL, Judge.

This case requires us to interpret the Maryland's Workers' Compensation Code provisions governing the limitations period for modifying compensation awards. The appellant was injured during the course of his employment and received temporary total disability payments. He later claimed permanent partial disability benefits but the Workers' Compensation Commission (Commission), relying upon time limitations, denied his claim, ultimately placing his case before us.

## FACTS AND PROCEEDINGS

Woodrow Wilson Vest, the appellant, injured his lower back on 3 November 1980. On 30 December 1980, Vest filed with the Commission a completed form entitled "Employee's Claim," alleging that he was injured in the course of his employment with Giant Food Stores, Inc. (Giant). Giant did not contest or file issues with regard to Vest's claim. No hearing was requested by Vest, Giant, or Giant's insurer. Consequently, no hearing was conducted by the Commission.

On 30 January 1981, relying on the information set forth in the claim and any other documentation in its file, the Commission issued an "Award of Compensation"[1] finding

---

1. This "Award of Compensation" is a standard form, the underlined portions of which herein indicate information inserted onto the form by the Commission.

that Vest "sustained an accidental injury arising out of and in the course of employment on *November 3, 1980*—that the average weekly wage was *$529.64*, and that the claimant was temporarily totally disabled as a result of said injuries." The Commission ordered the employer/insurer to pay Vest $241.00 per week "during the continuance of the temporary total disability ... compensation to begin on the *8th* day of *November, 1980*." The bottom of the Award of Compensation contains a sentence indicating that "[t]his Award is subject to further determination by this Commission as to whether the claimant has sustained any permanent disability."

Vest signed a "Statement of Compensation Paid" on 21 December 1980, and this was filed with the Commission. The form indicates that it is a "statement of compensation already paid, and signing means compensation payments cease. The case, however, is subject to review by the Workmen's Compensation Commission, and claimants should take the matter up promptly with the commission if anything further develops." The statement reflected payments from Giant to Vest in the amount of $1618.15 to compensate Vest for his temporary total disability.

We note here that Vest received temporary disability payments in addition to those reflected in the initial "Award of Compensation" and the "Statement of Compensation Paid," but the record is silent as to the procedures by which the payments resumed.

Vest received temporary total disability benefits from 5 November 1980 to 21 December 1980. These payments resumed on 28 December 1980, and continued until 3 January 1981. He received them again on 1, 2 and 5 February 1982. He also intermittently received temporary partial disability benefits from 20 December 1980 through 12 June 1981. The temporary partial disability payments resumed from 23 January 1982 through 6 March 1982. On 5 April 1982, Vest received the last temporary disability payment pursuant to his claim.

Vest subsequently required two disc surgeries, which he alleges were directly related to the injuries he suffered on 5 November 1980. Unfortunately for Vest, these surgeries were performed long after the limitations period purported to apply to his initial injury had expired. Vest's physician, Dr. John Bucur, determined that Vest had a forty-five percent partial disability of his lower back as the result of these operations. When Vest asked his insurance carrier adjuster whether he was entitled to permanent partial disability benefits, the adjuster told him that time limitations barred his claim.

On 5 April 1989, Vest formally requested additional benefits, and petitioned to reopen his claim, but the Commission on 28 August 1989 denied Vest's request on the ground that the request was barred by time limitations.

Vest appealed this decision to the Circuit Court for Prince George's County, which granted Giant's [2] motion for summary judgment on the basis of time limitations: Vest's claim for permanent partial disability benefits was made too late. Vest asked the court to amend its judgment, arguing that there had been no "award of compensation" within the meaning of the relevant statutory provision governing modifications. Vest also argued that the Commission made no findings and issued no order with respect to whether Vest sustained any permanent disability. On 15 May 1991, the Circuit Court denied Vest's motion to amend judgment.

Vest now appeals, asking us to consider:

I. Whether the 30 January 1981 administrative order of the Workmen's Compensation Commission is an award of compensation within the contemplation of Article 101 40(c)?

II. Whether the period of limitations contained in Article 101 40(c) bars an employee's claim asserted more than five years after an administratively-granted award of the

---

**2.** Aetna Casualty and Surety Company (Aetna), Giant's insurer, also is a party to this litigation.

Commission which did not make or purport to make findings with respect to the issue of permanent partial disability?

## STATUTORY BACKGROUND

■ We note at the outset that we must construe the state's Worker's Compensation Act as liberally as possible in the injured employee's favor, "in order to effectuate its benevolent purposes." *Howard County Ass'n for Retarded Citizens v. Walls,* 288 Md. 526, 530, 418 A.2d 1210 (1980). *See also* Md.Labor and Employment Code Ann. § 9–102 (Construction of title) (1991). Moreover, uncertainties should be resolved in the claimant's favor. *See Lovellette v. Mayor of Baltimore,* 297 Md. 271, 282, 465 A.2d 1141 (1983).

The statutory provision at issue here, in one incarnation or another, has been part of the Maryland Code for a long time. *See Holy Cross Hosp. v. Nichols,* 290 Md. 149, 154, 428 A.2d 447 (1981) (tracing the time limitation's history from its roots in the original Acts of 1914, Chapter 800, §§ 39, 42, 53). Although the time limit for modifying earlier awards has sustained numerous assaults,[3] this particular challenge apparently poses heretofore unraised arguments. The subsection provides as follows:

> (c) *Modifications or changes.*—The powers and jurisdiction of the Commission over each case shall be continuing, and it may, from time to time, make such modifications or changes with respect to former findings or orders

---

**3.** *See Holy Cross Hosp. v. Nichols,* 290 Md. 149, 428 A.2d 447 (1981) (claimant sought additional benefits even though the petition to reopen the claim was filed within five years from the date of last payment of *medical* benefits, and not within five years after the last payment of *disability* benefits); *Adkins v. Weisner,* 238 Md. 411, 209 A.2d 255 (1965) (payment made in lump sum invoked the limitations period, even though payments made over extended period would not have; employee requested lump sum payment); *Chanticleer Skyline Room v. Greer,* 19 Md.App. 100, 309 A.2d 638 (1973) (limitations period begins running on last date of payment, rather than on date payment became due).

with respect thereto as in its opinion may be justified; provided, however, that no modification or change of any award of compensation shall be made by the Commission unless application therefor shall be made to the Commission within five years next following the last payment of compensation.

Md.Ann.Code art. 101, § 40(c) (1985).[4]

## WHETHER THE COMMISSION'S 30 JANUARY 1981 ORDER WAS AN AWARD

■ Appellant calls on the Court to analyze the meaning of the document entitled "Award of Compensation" which was issued by the Commission on 30 January 1991 and signed by the Chairman of the Workers' Compensation Commission, Charles J. Krysiak. The document states at the outset that it is "an award of compensation". In the second paragraph of the award, it recites that "this Commission has concluded to pass an Order based on the evidence in the record". In the first paragraph the Order states that "after due consideration of the above entitled case, it is determined that the claimant sustained an accidental injury arising out of and in the course of his employment on November 3, 1980, that the average weekly wage was $529.64, and that the claimant was temporarily totally disabled as a result of said injuries". Finally, the employer and insurer are directed to "pay unto said claimant compensation at the rate of $241 per week payable weekly during the continuance of temporary total disability of the claimant, subject to the provisions of the Workmen's Compensation Law; compensation to begin on the 8th day of November 1980".

The term "award" is not defined by the Act. "Compensation," however, is defined, in pertinent part, as "the money

---

**4.** This provision has since been recodified (with slight modification) as Md.Labor and Employment Code Ann. § 9–736(b) (1991). For the sake of clarity, we shall herein refer to the section by its earlier designation—article 101, § 40(c).

allowance payable to an employee ... as provided for in this article ..." [5] Temporary total disability constitutes a type of disability for which a money allowance may be ordered to be paid pursuant to the Act.[6] The procedures which the Commission follows in determining the disposition of a claim are set forth at § 40(a), art. 101:

> (a) Hearing and award.—The Commission shall make or cause to be made such investigation of any claim as it deems necessary, and upon application of either party, shall order a hearing. Within thirty days after a claim for compensation is submitted under this section, or such hearing concluded the Commission shall make or deny an award, determining such claim for compensation, and file same in the office of the Commission.

As noted in § 40(a), no hearing is required to be held, absent a request by a party, before the Commission may "make or deny an award."

Appellant directs our attention to a distinction made, in a treatise on Maryland Workers' Compensation law [7], between an order entered administratively and one entered after a hearing. Judge Gilbert and Mr. Humphreys characterize the order issued without a hearing on the claim as "an Administrative Order" to pay benefits, rather than a decision regarding the validity of the claim. *Gilbert* at 275. While the authors do make a distinction between this type of administrative order and a decision made pursuant to a hearing, they do not make that distinction in the context for which appellant cites them. Subsequent to making their distinction, the authors note that either type of initial award of compensation is a final appealable order. Either would also be subject to a "Motion for Reconsideration". The authors' point, in citing the difference between the award

---

**5.** § 67(5), art. 101.

**6.** § 36(2), art. 101.

**7.** *Maryland Workers' Compensation Handbook,* Richard P. Gilbert & Robert L. Humphreys, Jr., Michie 1988, Pp. 274–275.

that comes as a result of an evidentiary hearing and the award that comes as a result of a review of the administrative record by the Commission, is actually to argue that the latter should not carry with it a presumption of correctness for purposes of appeal. *Id.* at 275.

In the context of the case *sub judice,* we view the Commission's 30 January 1981 order as a decision directing that temporary total disability compensation be paid to Vest. As such, it is an award. This view is consistent with the Court of Appeals' reasoning in *Paolino v. McCormick & Co.,* 314 Md. 575, 552 A.2d 868 (1989). In *Paolino,* the Court was called upon to determine whether a Commission order (1) declining to apply the time bar of § 40(c) to the claim, (2) denying temporary total disability, and (3) reserving on the question of permanent partial disability, was an appealable order. The employer sought to obtain judicial review of the Commission's refusal to apply the time limitations. The Court, adopting the reasoning of a prior case,[8] stated that a "decision", for appeal purposes, is an "order by which it disposes of the case". *Id.* 314 Md. at 582, 552 A.2d 868. Referencing Chief Judge Gilbert's opinion for this court in *Great American Insurance v. Havenner,* 33 Md.App. 326, 332, 364 A.2d 95 (1976), the Court of Appeals quoted with approval: " '[F]inal order' or 'final action', within the ambit of the Workmen's Compensation law, means an order or award made by the Commission in the matter before it, determining the issues of law and of fact necessary for a resolution of the problem presented in that particular proceeding *and* which grants or denies some benefit under the Act." *Id.* 314 Md. at 583, 552 A.2d 868 (emphasis in original). It should also be noted that the Court observed that the subject order's statement about reserving the permanent partial disability question was at best a gratuitous reference to the Commission's possible continuing jurisdiction, citing Gilbert and Humphrey's trea-

---

8. *Liggett & Meyers Tobacco Co. v. Goslin,* 163 Md. 74, 78, 160 A. 804 (1932).

tise. *Id.* at 583, 552 A.2d 868. The Court found the Commission's order was, as to the denial of the temporary total disability claim, a final decision and thus appealable.[9]

There can be no quarrel that the Commission's order of 30 January 1981 in the case *sub judice* was a final decision of the Commission regarding Vest's claim. It made findings and determined that an award of compensation as to temporary total disability was appropriate based on the evidence before it. As no hearing was required to be held before such a decision was made under the facts presented here, it was no less a disposition of the claim before it at that time. We find, therefore, that for purposes of the application of the time limitations of § 40(c), the Commission's 30 January 1981 decision was an "award of compensation."

### WHETHER THE LIMITATIONS PERIOD BARS VEST'S CLAIM

■ As recognized earlier, the Worker's Compensation Act should be liberally construed and all uncertainties should be resolved in the claimant's favor. In our view, however, article 101, § 40(c), by its terms, is plain and unambiguous and leaves no room for interpretation. *See Adkins v. Weisner,* 238 Md. 411, 414, 209 A.2d 255 (1965).

Article 101, § 40(c) gives the Commission "perpetual and unlimited jurisdiction to reopen cases as often as necessary to make benefits meet current conditions." 3 Larson, *Workmen's Compensation Law* § 81.10 (1989) (citations omitted). It is among the most liberal reopening provisions in the country:

> The power of Workmen's Compensation Commissions to re-open and modify awards is statutorily permitted in most states. Some statutes limit re-opening to change in conditions, others to mistake, fraud, error or newly dis-

---

9. In the context of *Paolino,* however, the final decision was favorable to the employer, so the employer could not maintain an appeal therefrom.

covered evidence. Maryland, which has one of the broadest re-opening statutes, not only gives the Commission continuing jurisdiction over each case, it also invests the Commission with blanket power to make such changes as in its opinion may be justified.

*Subsequent Injury Fund v. Baker*, 40 Md.App. 339, 345, 392 A.2d 94 (1978).

Article 101, § 40(c) also provides that:

no modification or change or any award of compensation shall be made by the Commission unless application therefor shall be made to the Commission within five years next following the last payment of compensation.

This limitation applies to exercises of the Commission's power under subsections (b) and (c) of article 101, § 40(c). *Dashiell v. Holland Maide Candy Shops*, 171 Md. 72, 75, 188 A. 29 (1936).

The limitation constitutes the General Assembly's attempt to come to terms with the dilemma of modifying compensation awards. That the limitation period is five years long is itself arguably consistent with the benevolent purposes of the Act. *See Suber v. W.T.A.*, 73 Md.App. 715, 720–21, 536 A.2d 142 (1988).

The appellant would have it that, because the Commission's award was an award for temporary disability and not for permanent disability, because no hearing was conducted before making the award, and because the Commission's award was issued on a standard form containing a sentence indicating that "[t]his Award is subject to further determination by this Commission as to whether the claimant has sustained any permanent disability," the Commission's "blanket power" to reopen cases and change awards was somehow expanded even further. While we sympathize with appellant's situation, we can find within the Act itself no principled grounds of support for such a conclusion.

The appellant correctly points out that the Commission's award to appellant was an award for temporary disability, and not for permanent disability. The appellant suggests

that while the General Assembly may have contemplated a limitation on a modification of a permanent award, it could not have contemplated a limitation on a modification of an award from a temporary to a permanent one. Both the former and the latter, however, constitute modifications or changes within the contemplation of article 101, § 40(c). The appellant points to nothing in the Act that distinguishes between the two, and this is understandable, given the breadth of article 101, § 40(c). The blanket power to re-open cases provided by article 101, § 40(c) vests in the Commission power to make any modification or change in any award. The appellant does not suggest, and the Act does not require, that appellant have filed a different claim to receive a permanent award. To the contrary, appellant need simply have petitioned to reopen his case and change the award, as he in fact did.

The fact that no hearing was ever conducted in this case is immaterial to the question of whether the limitation period applies to appellant's claim. The Act neither requires the Commission to conduct a hearing before making an award nor distinguishes between an award issued with a hearing and an award issued without a hearing. In the instant case, no hearing was conducted prior to the making of an award because appellant's claim was not contested by his employer. There can be no dispute that, even had a hearing been conducted prior to the issuance of the award, no permanent disability would have been detected.

The Court of Appeals has addressed the statute's limitations period in several cases which ostensibly resemble the case *sub judice*. We shall review these cases, discussing their implications for Vest's claim.

We begin our survey with *Porter v. Bethlehem–Fairfield Shipyard*, 188 Md. 668, 53 A.2d 668 (1947), a case in which the Court of Appeals determined that the statute's limitations period, three years at that time, did not bar the claimant's subsequent appeal for compensation. Porter was injured on the job, and the Commission on January 23, 1942, awarded him temporary total disability compensation.

After these payments ceased, Porter returned to work, but continued to suffer discomfort, and eventually received surgery for which he was hospitalized for eleven days, June 4th through June 25th, 1942. During this second period of disability, Porter did not receive compensation. His employer did not file a report of this operation with the Commission, and although Porter filed with the insurance company a statement describing his injuries and treatment, the statement was not filed with the Commission, nor was a claim filed.

On 4 January 1946, Porter requested a hearing before the Commission to determine the nature and extent of his disability. The Commission conducted a hearing, and upon its conclusion determined that Porter's temporary total disability compensation award extended through the period following his operation. Its order was designated "Supplemental Compensation Award." The Commission also denied Porter's petition to reopen the case as to a determination of his permanent disability on the ground that the statute barred it. The lower court affirmed the Commission.

The Court of Appeals reversed both trial court and Commission, saying that "[s]o long as [the supplemental compensation award] remains due and unpaid, we think the statute does not run." The court added that, "the section, as applied to the facts of this case, presents no obstacle to the claim. We think the trial court erred in ruling as a matter of law that the period of limitation had expired at the time application for an additional award for permanent partial disability was made." *Id.* at 675–76, 53 A.2d 668.

What distinguishes *Porter* from Vest's situation is that Vest abandoned on appeal a claim which he mounted before the Commission that he was still owed supplemental temporary total disability compensation.[10] The window of oppor-

---

10. Before the Commission, Vest asserted at the hearing of 23 August 1989 on his permanent partial disability claim that $60.00 remained owed to him for temporary total compensation covering the period 5

tunity that existed in *Porter* to interpret the Act liberally so as to benefit the injured employee is not present in the case *sub judice.*

We next turn to *Vigneri v. Mid City Sales Co.*, 235 Md. 361, 201 A.2d 861 (1964), in which the Court of Appeals distinguished *Porter*, and concluded that the statute of limitations barred the claimant's request for additional compensation. In *Vigneri*, as in the case *sub judice*, the Commission awarded the claimant temporary total disability compensation. Those payments covered the period February 6, 1954 to March 13, 1954. Subsequently, he suffered a recurrence of the original injury and was paid compensation for the period of October 9 through October 30, 1954. Upon the payments' cessation, the Commission requested from the insurer a report describing the nature of any permanent disability Vigneri might have sustained. The Commission on December 28, 1954 sent Vigneri a copy of this letter, and requested that he contact the Commission right away, if his doctor had discharged him and if he had sustained permanent disability. Vigneri's doctor responded that he had not seen Vigneri since his (the doctor's) previous report, and assumed that Vigneri was back at work, and free of symptoms.

Nothing further occurred in the case until December, 1958, when Vigneri was hospitalized and consequently requested a Commission hearing upon the nature and extent of his disability and reimbursement for medical expenses. This the Commission granted him, after determining that the then three year statute of limitations did not bar them from hearing Vigneri's claim. The lower court reversed this decision, and the Court of Appeals affirmed, holding that the Commission should have denied Vigneri's request to reopen his case to permit them to make an additional award, because the statutory period of limitations had expired. *See Id.* at 364, 201 A.2d 861.

---

November 1980 to 21 December 1980. The Commission found against appellant.

Vigneri argued that *Porter* barred his employer and insurer from raising the question of limitations, but the Court of Appeals rejected this, stating that

> inasmuch as the decision in that case was predicated on the fact that payments were still due and unpaid, the application for a hearing to determine the nature and extent of disability did not involve a reopening of a stale claim but the conclusion of one that had not been barred.

*Id.* at 365, 201 A.2d 861. The court concluded that the *Porter* holding did not apply because Vigneri "received full payment for the temporary total benefits due him ... more than three years before he applied for a hearing as to the nature and extent of his disability." *Id.*

The similarities between *Vigneri* and this appeal are not merely superficial. The notice that Vigneri received in the form of the Commission's request for information as to any permanent disability he suffered was not more specific as to any statutory time limitation running on a possible permanent disability claim than was given to Vest in his "Award of Compensation" and "Statement of Compensation Paid."

At this juncture, we note *Davis v. Silver Hill Concrete Co.*, 255 Md. 482, 258 A.2d 591 (1969), in which the Court of Appeals determined that the statute's then three year limitations period barred Davis' claim for an additional award of permanent disability compensation. Davis raised the issue of missed payments to argue that the limitations period did not bar his claim, but the court rejected this argument on the ground that Davis raised it only to circumvent the statute. *Id.* at 488, 258 A.2d 591. Indeed, Davis was fully compensated by his insurer or by his employer for the entire period in issue. As he received compensation from the state, he endorsed the checks and turned them over to his employer as reimbursement for the portion of his salary covered by the award. He did not attempt to collect the unpaid compensation, and did not raise this as an issue in his request for hearing before the Commission.

*Davis* interests us here for several reasons. The Commission scheduled several hearings to determine the nature and extent of any permanent disability Davis might have suffered, but the parties repeatedly postponed them. Eventually, the employer's insurer advised Davis that if he wished to proceed, he would have to request a hearing. This Davis failed to do within the statutory period. No hearing was held. The Court of Appeals nonetheless barred Davis' claim.

Modifying compensation awards presents an administrative dilemma.

[N]o matter how competent a commission's diagnosis of claimant's condition and earning prospects at the time of hearing may be, that condition may later change markedly for the worse, or may improve, or may even clear up altogether. Under the typical award in the form of periodic payments during a specified maximum period or during disability, the objectives of the legislation are best accomplished if the commission can increase, decrease, revive, or terminate payments to correspond to claimant's changed condition. Theoretically, then, commissions ought to exercise perpetual and unlimited jurisdiction to reopen cases as often as necessary to make benefits meet current conditions. But the administrative and practical difficulties of such a course have led to severe limitation on the power to reopen and alter awards. The most serious administrative problem lies in the necessity of preserving the full case records of all claimants that have ever received any kind of award, against the possibility of a future reopening. Moreover, any attempt to reopen a case based on an injury ten or fifteen years old must necessarily encounter awkward problems of proof, because of the long delay and the difficulty of determining the relationship between some ancient injury and a present aggravated disability. Another argument is that insurance carriers would never know what kind of future liabilities they might incur, and would have difficulty in computing appropriate reserves.

3 Larson, *Workmen's Compensation Law* § 81.10 (1989) (citations omitted). Provisions wherein the legislature empowers the compensation agency to reopen and modify awards are universal among the states, and constitute each state's attempt to come to terms with the dilemma. *Id.*

We are aware that other states' decisions have addressed this dilemma differently by adopting a liberal reading of any reservation of continuing jurisdiction over findings and orders, whether couched in general statutory language [11] or specific language in a decision.[12] We do not find their reasoning persuasive.

Based on *Brooks v. Duncan*, 96 Idaho 579, 532 P.2d 921 (1975), for example, one could conclude that in appellant's case the Commission made a "temporary award, pending further determination of his eligibility for permanent disability benefits," and argue that appellant was entitled to a hearing on the matter of his eligibility for permanent disability benefits. Such a statement, however, would be nothing more than another way of expressing the fact that the Commission has "blanket power" to reopen a case to change an award. It also begs the question, for it does not explain why, simply because the Commission in appellant's case made a temporary award rather than a permanent one, the limitation period should not apply to him.

One could compare the instant case to *Williams v. Safeway Stores*, 525 P.2d 1087 (Alaska 1974), an Alaska case in which the court's analysis was premised on an implicit power in the Alaska Workmen's Compensation Board to reserve jurisdiction over a case. As we have already suggested, however, implying that the Commission possesses such a "dormant power" would be totally inconsistent with

---

**11.** § 40(c), art. 101, for example, provides that the Commission has continuing jurisdiction to modify former findings and orders.

**12.** For example, the Commission's 30 January 1981 "Award of Compensation" which contained a statement that "[t]his Award is subject to further determination by this Commission as to whether the claimant has sustained any permanent disability.

the "blanket power" to reopen cases vested in the Commission by article 101, § 40(c). We do not perceive why a standard sentence contained on a standard form, issued when an award is made without a hearing, should have the effect of expanding the Commission's already virtually unlimited jurisdiction. In any event, because of our plain reading application of the Maryland statute to the facts at hand, we have no need to address exhaustively how other states have approached a comparable situation.

In our view, the appellant's argument boils down to an objection to the application of the limitation period in the instant case because the result would be anomalous and cruel. One might argue that application of the limitation period is not anomalous but practical, since, due to administrative and practical difficulties, even the most benevolent of benefits must have an end point. In any case, as we have already stated, article 101, § 40(c) is, by its terms, plain and unambiguous, and leaves no room for interpretation.

JUDGMENT AFFIRMED;

COSTS TO BE PAID BY APPELLANT.

ALPERT, J., dissents.

ALPERT, Judge, dissenting.

As the majority points out, "modifying compensation awards presents an administrative dilemma." Because I disagree with the majority's interpretation of Maryland's legislative provision enabling the modification of awards, I must respectfully dissent.

Section 40(c) contains two segments, the first providing the Commission continuing jurisdiction to modify former findings or orders, and the second imposing a five year limit to requests that the Commission modify its award of compensation.

Continuing jurisdiction reserves the Commission's power over an award, such that the award "does not achieve

finality and is therefore not subject to the limitations on reopening applicable to final awards...." 3 Larson, *Workmen's Compensation Law* § 81.53(a) (1989). In many states, this means that if the Commission reserves jurisdiction over an award, the award is not subject to the limitations period that otherwise would apply. *See Horton v. Garrett Freightlines*, 106 Idaho 895, 684 P.2d 297 (1984) (income benefits are time barred unless Commission retains jurisdiction; here, Commission retained jurisdiction for future determination of permanent disability); *Lopez v. New York City Hous. Auth.*, 71 A.D.2d 750, 419 N.Y.S.2d 244 (1979) (Board has broad powers of continuing jurisdiction over closed cases, including right to modify a decision in such a way that it reaches a different result on the same record); *Brooks v. Duncan*, 96 Idaho 579, 532 P.2d 921 (1975) (limitations period applies only to final awards, and did not apply in case in which no evaluation of residual partial permanent disability had been made at the time of the hearing, and the Board had reserved jurisdiction); *Williams v. Safeway Stores*, 525 P.2d 1087 (Alaska 1974) (Board has power to retain jurisdiction over case, obviating the claimant's further action to avoid time limit); *Palmeri v. Riggs–Sargent, Inc.*, 147 Ind.App. 430, 261 N.E.2d 887 (1970) (adjudication concerned temporary total disability and did not adjudicate the claimant's permanent partial disability; under these circumstances, time limit does not bar petition for adjudication of permanent partial impairment); *Boden v. City of Hialeah*, 132 So.2d 160 (Fla.1961) (following *Superior Home Builders v. Moss*, 70 So.2d 570 (Fla. 1954), to find that limitation did not bar additional claim for permanent partial disability); *Pratt v. Central Upholstery*, 252 N.C. 716, 115 S.E.2d 27 (1960) (Commission has authority to retain jurisdiction to make further adjustments pending final award; limitations statute is inapplicable if there has been no final award).

Although reservation of jurisdiction may be implied,[1] it need not be established here: the first segment of section 40(c) provides for continuing jurisdiction, and the "Award of Compensation" indicates the Commission's intent to reserve jurisdiction, in that its language provides for further determination by the Commission "as to whether the claimant has sustained permanent disability."

My analysis turns to consider the nature of the benefits for which Vest applied and was awarded. The "Employee's Claim" form does not assist us in determining whether Vest's claim was for temporary disability benefits, or for permanent disability benefits, or both. It solicits from claimants personal information, a brief description of how the accident occurred, and minimal medical information, such as the name of the claimant's attending physician, and whether the claimant is taking medication. The bottom of the form contains the following statement over the claimant's signature: "I hereby make claim for compensation for an injury resulting in my disability, due to an accident (or disease) arising out of, and in the course of my employment and in support of it I make the foregoing statement of facts." The form does not give a claimant the opportunity to indicate whether the person is applying for permanent disability benefits, or temporary disability benefits—it merely gathers data.

By contrast, the "Award of Compensation" abundantly evidences the conclusion that the Commission's award was for temporary disability, and not permanent disability, compensation.[2] It determined that Vest "was temporarily total-

---

1. *See Williams v. Safeway Stores,* 525 P.2d 1087 (Alaska 1974) (evidence before Board concerning the claimant's permanent disability consisted of medical reports that anticipated permanent disability, but couldn't rate it).

2. Moreover, the "Statement of Compensation Paid" that Giant's agent and Vest both signed, indicated that Vest received "Temporary Total" compensation for "Temporary Total Disability." Spaces for indicating "Temporary Partial," "Permanent Partial," and "Permanent Total" payments were left blank. This suggests that each of the parties

ly disabled as a result of said injuries." It ordered Giant to pay weekly compensation to Vest "during the continuance of the temporary total disability." Significantly, the Commission's Order contained no findings concerning Vest's potential permanent disability, and reserved the possibility that it would make further determinations "as to whether the claimant has sustained any permanent disability." I conclude that the Commission's award to Vest was an award for temporary disability, and not for permanent disability.

The Commission did not conduct a hearing before making this award. Indeed, the "Employees Claim" form contains a box informing employers and insurers that "Unless a request for hearing is received by the Commission on or before _____ an Order will be passed upon the evidence in the hands of the Commission." [3] The "Award of Compensation" form contains language to the effect that the Commission "has concluded to pass an Order based on the evidence in the record," but reserves each party's right to have average weekly wage issues "adjudicated at the time a hearing is held." This is not inconsistent with the statutory scheme, which provides procedures for either party to obtain a hearing, but does not require the Commission to conduct such a hearing before making an award. *See* Md.Labor and Employment Code Ann. § 9–709(a) (1991) (requiring employees who suffer accidental personal injury to file with the Commission a claim application form); *id.* § 9–713 (requiring employer/insurer to begin paying temporary total disability benefits within a specified time after a claim is filed, or to file with the Commission any issue to contest the claim, and providing penalties for failure to do so); *id.* § 9–714(a) ("When the Commission receives a claim, the Commission: (1) may investigate the claim; and (2) on application of any party to the claim, shall order a hear-

understood that the payments were for temporary total disability compensation, and not for permanent disability compensation.

3. This date is known as the "consideration date."

ing."); § 9–715(a) (the Commission may conduct an investigation to determine the parties' rights and carry out the title's spirit). At the expiration of the consideration date, the Commission automatically issues a temporary total award.

Nothing in the record suggests that the Commission at any time considered Vest's eligibility for permanent disability payments, nor is there any evidence that he requested such before the request that led to this appeal. Indeed, the "Attending Physician's Report," another Commission form, filed soon after Vest was injured, and those intermittently filed until December, 1984, all indicate that Vest's physicians did not anticipate that his injuries would result in "permanent defect or disfigurement."

Vest's subsequent surgeries were performed upon him on April 9, 1987, and August 19, 1987. His physician recommended on April 20, 1988, that Vest retire because he allegedly was permanently disabled. Vest did not make a permanent disability claim until 1989.

I now turn to consider whether the reasoning underlying other states' decisions might have some application to the case *sub judice.*

In *Boden v. City of Hialeah*, 132 So.2d 160, 161 (Fla. 1961), the Supreme Court of Florida considered whether a Commission Order that denied further compensation, but contained the language "Whether claimant will have any permanent disability cannot be determined at this time," was an adjudication of the claimant's rights to compensation for permanent disability, in light of the fact that the claimant did not seek modification of the order within the period required by statute. The employer/carrier argued that Florida law barred subsequent claims filed more than a specified time after the original order was entered.[4] The

---

4. The relevant Florida statute, as it appeared then, is similar in substance to the statute in issue here.

    [T]he commission may at any time prior to one year after the date of the last payment of compensation, whether or not a compensa-

employee argued that the Commission did not adjudicate his right to permanent disability benefits because the Commission did not consider the question. A deputy commissioner rejected the defense of limitations, and the full Commission affirmed, awarding the employee permanent partial disability benefits.

Upon review, the Supreme Court of Florida concluded that the statute did not bar an *"additional claim* for permanent partial disability, for the employee did not seek relief under the statute." *Id.* at 162 (statute's one year limitations period bars claims based upon change of condition or mistake). The court also indicated that "the insurance carrier was placed on notice of the continuance of the employee's claim and is in no position to assert that the original order ..: disposed of each and every claim on behalf of the claimant." *Id.* In reaching this decision, the court followed an earlier Florida case in which it wrote that "the one-year period contained in the statute controls only where subsequent to the entry of an original award the claimant seeks a modification of such award on the ground of a change in physical condition caused by the accident...." The statute did not apply when the second claim was for additional treatment and compensation, and was not based upon a change in condition or mistake. *See Superior Home Builders v. Moss,* 70 So.2d 570, 572 (Fla.1954).

The parallels between *Boden* and the case at bar are apparent. Vest's present claim is for additional compensation—his heretofore unadjudicated claim for permanent disability compensation. Also the record contained numerous letters indicating that the insurance carrier involved here had notice that Vest's claim was continuing in nature.

---

tion order has been issued, ... review a compensation case ... [and] issue a new compensation order which may terminate, continue, reinstate, increase, or decrease such compensation, or award compensation.
Fla.Stat. ch. 440 § 440.28 (1991) (see historical and statutory notes).

In *Williams v. Safeway Stores,* 525 P.2d 1087 (Alaska 1974), the Supreme Court of Alaska interpreted the Alaska statute that is comparable to the one in issue here.[5] Although the parties' arguments centered upon the proper construction of the statute, the court found another issue dispositive: "whether the board reserved jurisdiction over the permanent disability elements of [the employee's] claim in its ... decision in this case." *Id.* at 1088. In *Williams,* the employer voluntarily paid temporary total disability compensation to the injured employee until a dispute evolved concerning further payments. The dispute was settled when the Alaska Workmen's Compensation Board awarded the employee temporary total disability and permanent partial disability compensation. The employee later asked the Board to modify the award, but while the petition was pending, his condition deteriorated sufficiently to require major surgery. By the time the Board heard the petition to modify its earlier order, the employee's doctors could not rate his degree of permanent disability, but it issued an order awarding the employee compensation for past and continuing temporary total disability. When the employee had received the statutory limit in temporary disability payments, he was still totally disabled and unrated for permanent disability. *Id.* at 1088.

The employee asked the Board to "open" his case to consider awarding him permanent total disability payments. His employer contested the claim, asserting the limitations period contained in Alaska Stat. § 23.30.130(a), *supra* note 9. The Board conducted a hearing, and granted the employee's claim for permanent partial disability. The employer appealed, and obtained a summary judgment on the limita-

---

5. Upon its own initiative, or upon the application of any party in interest on the ground of a change in conditions or because of a mistake in its determination of fact, the board may, before one year after the date of the last payment of compensation, whether or not a compensation order has been issued, or before one year after the rejection of a claim, review a compensation case....
Alaska Stat. § 23.30.130(a) (1991).

tions issue, whereupon the employee appealed to the Alaska Supreme Court.

The court premised its analysis upon the Board's ability to reserve jurisdiction over a case, "thus obviating further action on the part of the claimant to avoid the time limitation of [the statute]." *Id.* at 1090 (citing *Boden, supra; Palmeri v. Riggs–Sargent,* 147 Ind.App. 430, 261 N.E.2d 887 (1970); *Pratt v. Central Upholstery Co.,* 252 N.C. 716, 115 S.E.2d 27 (1960); *Craft v. State Compensation Director,* 149 W.Va. 28, 138 S.E.2d 422 (1964); 3 Larson, *Workmen's Compensation Law* § 81.53). The Board had before it medical evidence that demonstrated that the employee would have a changed permanent disability, but that the degree of his disability could not be determined until after the hearing. The court determined that the Board had impliedly reserved jurisdiction. It said, "Short of the phrase, 'we reserve jurisdiction to determine permanent disability', the Board could not have indicated more clearly that further compensation proceedings were contemplated as soon as [the employee's] condition stabilized." *Id.* at 1091. Because the board reserved jurisdiction, the court concluded that the employee's request to reopen his case "called upon that dormant power; it was not a petition for modification or reopening under AS 23.30.130(a), and was not subject to the one-year limitation of that statute." *Id.*

If this court followed Alaska's lead, the limitations period would not preclude Vest's claim. The Commission plainly and expressly reserved its jurisdiction to determine at some future date whether Vest was permanently disabled. Under this analysis, Vest's request to reopen his case should be viewed not as a petition for modification within the meaning of section 40(c)'s second segment, but as a summoning of the Commission's "dormant power."

Giant objected to this line of reasoning on the ground that it raises the specter of a limitations period that cannot begin to run until employers trigger it by contesting a case, thereby precipitating an evidentiary hearing. This is because the Commission ordinarily makes what amounts to an

automatic temporary disability compensation award, and does not conduct a hearing unless the employer contests the case. Although ever mindful of imposing additional burdens upon the state's administrative agencies, because they are the entities most substantially affected if more hearings must be conducted, this argument has little merit in light of the statute's benevolent purpose, adverted to earlier, and its structure, which so obviously favors claimants.[6]

Finally, there are two Idaho cases in which the limitations period did not bar the Commission from making permanent disability compensation awards. In *Brooks v. Duncan*, 96 Idaho 579, 532 P.2d 921 (1975), the state Supreme Court considered an employee's claim for additional temporary total and permanent partial disability benefits. After the employee was injured, he filed with his employer a claim which the employer denied, asserting that the claimant was not his employee. The employee demanded a hearing, after which the Board identified the employer, and ordered him to pay benefits to the employee. Six weeks later, the Board ordered the employer to pay the employee's medical expenses, as well as total temporary disability payments. The order contained the Board's finding of fact that the employee's residual permanent partial disability had not been evaluated at the time of the hearing. The Board's rulings of law included language indicating that the "award is final only as to the issues herein decided.... [and] the Board reserves jurisdiction to hear and determine upon appropriate supplemental pleadings by any party in interest." *Id.* 532 P.2d at 923.

The employee later resumed work, but eventually he needed surgery which debilitated him enough to prevent him from returning to work for several months. Nearly two years later, he applied to the Commission (the Board's successor) for further benefits, asking for medical ex-

---

6. I refer, *inter alia,* to the provisions protecting claimants by promptly awarding them compensation payments during the pendency of their claims and appeals.

penses, temporary total disability benefits and permanent partial disability benefits. The Commission refused the claim on the ground that the statutes of limitations barred it,[7] and because the employee failed to notify his employer of the operation, thereby affording the employer an opportunity to authorize or reject treatment at his expense. *Id.* 532 P.2d at 923.

The court concluded that the Commission should not have dismissed the employee's claim. "When [the employee] demanded a hearing on his claim which was denied by [the employer], the ... Board was vested with the jurisdiction to decide all of the issues involved in the matter, including the issues of permanent disability and the total amount of medical expense which would ultimately be required to correct [the] injury." *Id.* at 924–25. The Commission's findings of fact indicated that it did not intend to pass on the employee's permanent disability until his doctors released him. The court also found that the limitations statute did not apply to the facts of the case. It said, "where the Commission has not made a final award, but has only made temporary allowances, there is no final award to be modified. We conclude that [the statute] only applies where a final award has been made by the Commission." *Id.* at 925.

Furthermore, we feel that not only are [the statutory provisions] inapplicable to the circumstances of this case, but that they do not set any public policy limiting the amount of time within which the Industrial Commission can retain jurisdiction after making a temporary allow-

---

**7.** The relevant provision is as follows:

On application made by any party within five years of the date of the accident causing the injury, on the ground of a change in conditions, the board may ... review any agreement or award, and on such review may make an award ending, diminishing or increasing the compensation previously agreed upon or awarded....

Idaho Code § 72–607 (recodified at § 72–719). *See also infra* note 8 for the text of the other disputed statute.

ance in order to make a final permanent award to an injured employee.

*Id.*

The Commission in Vest's case made a temporary award, pending further determination of his eligibility for permanent disability benefits. Hence, there is no final award to be modified, at least with respect to Vest's permanent disability, and Vest therefore would be entitled to a hearing on this matter.

The other Idaho case, *Horton v. Garrett Freightliners,* 106 Idaho 895, 684 P.2d 297 (1984) relied upon *Brooks.* The employee received temporary total disability benefits, and subsequently returned to work. At that point, the surety asked the employee's doctor whether the doctor thought that the employee was entitled to a permanent disability award. The doctor advised the surety to keep the case open because the employee could develop accident-related arthritis over time. Without mentioning impairment or disability ratings, the surety filed a summary and award form, and asked the Commission to close the file. The Commission filed the summary and award form, noting on the form that it was "approved subject to determination of permanent disability, if any." *Id.,* 684 P.2d at 298 (emphasis deleted).

Seven years later, the employee's doctor noted significant progressive degenerative changes in the employee's condition, and recommended major surgery. The following year, the employee applied to the Commission for a hearing; the employer agreed to pay his medical benefits, but denied liability for other benefits. After a hearing, the Commission held that the limitations period [8] barred the employee's application.

---

**8.** This limitations period was contained in Idaho Code § 72-607(2), which at that time (1974) provided that:

When compensation discontinued. When payments of compensation have been made and thereafter discontinued, the claimant shall have five (5) years from the date of the accident causing the injury or date of first manifestation of an occupational disease, within

The court concluded that the statute bars claims for income benefits "unless the commission has retained jurisdiction of the claim." *Id.* at 298. It deemed the Commission's conditional closure of the employee's file an indication of its "intent to retain jurisdiction for future determination of permanent disability." *Id.* at 299. The court held that the Commission retained jurisdiction of the claim for future determination of the employee's permanent disability.

In *Horton* and *Williams*, the injured employees apparently received disability benefits without a hearing. *Brooks* differs from these in that the Commission conducted a hearing before making its award, but we note that as *Horton* followed *Brooks*, the fact that a hearing occurred does not seem to have been dispositive.

The majority uses several Maryland cases to bolster its interpretation. I need not repeat here the factual details of these cases, as they have been amply described above, but distinguish them from Vest's claim as follows. In *Vigneri v. Mid City Sales Co.*, 235 Md. 361, 201 A.2d 861 (1964), Vigneri received notice in the form of the Commission's request for information as to any disability he suffered. Although Vigneri did not respond to the Commission's inquiry, at least it invited him to make a permanent disability claim. Unlike Vigneri, the Commission did not invite Vest to report on his disability status. Likewise, in *Davis v. Silver Hill Concrete Co.*, 255 Md. 482, 258 A.2d 591 (1969), Davis had many opportunities to assert his claim for permanent disability compensation, and was aware that he was responsible for bringing his claim to the Commission's attention. Unlike Davis, Vest was not informed that he would have to initiate proceedings to determine his status. Finally, to distinguish Vest's claim as one that is barred because it was paid in full, from *Porter v. Bethlehem–Fairfield Shipyard*, 188 Md. 668, 53 A.2d 668 (1947), in which the temporary total compensation was not paid in

which to make and file with the commission an application requesting a hearing for further compensation and award.

full, is functionally minimal and unjust. I therefore believe that the limitations period, held not to apply in *Porter,* likewise should not bar Vest's claim.

I remind the majority that "[t]he Workmen's Compensation Act is essentially social legislation and the provisions thereof are to be liberally construed. Where there is conflict on the Workmen's Compensation law, questions of construction should be resolved in favor of the claimant." *Bethlehem–Fairfield Shipyard, Inc. v. Rosenthal,* 185 Md. 416, 425, 45 A.2d 79 (1945). And, if the majority suggests, for reasons of *stare decisis,* that the Maryland cases are controlling, the learned Supreme Court Justice Benjamin Nathan Cardozo had this to say:

> There shall be symmetrical development, consistently with history or custom when history or custom has been the motive force, or the chief one, in giving shape to existing rules, and with logic or philosophy when the motive power has been theirs. But symmetrical development may be bought at too high a price. Uniformity ceases to be a good when it becomes uniformity of oppression. The social interest served by symmetry or certainty must then be balanced against the social interest served by equity and fairness or other elements of social welfare. These may enjoin upon the judge the duty of drawing the line at another angle, of staking the path along new courses, of marking a new point of departure from which others who come after him will set out upon their journey.

Cardozo, *Cardozo on the Law* 112–13 (1982).

Given the Maryland statute's intent and the fact that it unquestionably favors claimants at nearly every turn, coupled with the analytic framework inspired by the foregoing cases from elsewhere, I conclude that section 40(c)'s limitations period does not prevent Vest from asserting a claim for permanent disability. To do otherwise would be to deny a fair hearing to someone who might have been protected by the statute, had his condition deteriorated more rapidly. As Larson put it:

It is odd indeed to find, in a supposedly beneficient piece of legislation, the survival of this fragment of irrational cruelty surpassing the most technical forfeitures of legal statutes of limitation. Statutes of limitation generally proceed on the theory that a man forfeits his rights only when he inexcusably delays assertion of them, and any number of excuses will toll the running of the period. But here no amount of vigilance is of any help. The limitations period runs against a claim that has not yet matured; and when it matures, it is already barred. For good measure, the exclusive remedy provisions of the Compensation Act also abolish claimant's common-law remedies.

Larson, *supra* § 78.42(b) (1989). When it enacted the subject statute, the Maryland General Assembly may have contemplated a time bar on a *modification* of a permanent award, but never the anomalous and hapless result decided by the Commission. Accordingly, I would reverse.